**In re Donald Eugene MARTIN aka, Donald E. Martin, dba Don Martin Moving and Storage, Debtor.**

**Bankruptcy No. SA 83–00064 JR.**

United States Bankruptcy Court, C.D. California.

April 24, 1987.

James L. Huffman, Santa Ana, Cal., for debtor.

Karin A. Lane of O'Melveny & Myers, Newport Beach, Cal., for Crovine.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Crovine Limited Partnership—81 ("Crovine") moved for allowance of its claim for past due rent as a priority administrative expense pursuant to 11 U.S.C. §§ 503, 507 and 348 (the "Motion"). The claim of Crovine is for rents due and payable from Debtor for the use of commercial premises (the "Premises") during the pendency of the Debtor's previous Chapter 13 proceeding (the "Claim"). Debtor had converted his Chapter 13 to a Chapter 11 case. Crovine alleges that the Claim is an administrative expense entitled to first priority. Debtor contends that use of the Premises was not for the benefit of Debtor's estate. Consequently, by definition the Claim cannot be an administrative expense. See 11 U.S.C. § 503(b)(1)(A). For the reasons set forth below, I find for Crovine.

## STATEMENT OF PERTINENT FACTS

In December, 1982, Crovine, as landlord, and Debtor, as tenant, entered into a written lease agreement (the "Lease") for the Premises. On January 6, 1983, prior to Debtor taking possession of the Premises, Debtor filed a petition for relief under Chapter 13. Debtor did not list Crovine as a creditor in his Chapter 13 schedules. Debtor's second amended plan of arrangement was confirmed on December 20, 1983 (the "Plan").

On or about June 5, 1984, Debtor defaulted under the terms of the Lease. Shortly thereafter, Crovine learned of Debtor's bankruptcy status. Crovine immediately filed an adversary proceeding for relief from the automatic stay and termination of the Lease. On July 6, 1984, Debtor filed an application to assume the Lease. The parties entered into a stipulation on October 9, 1984 by which Debtor assumed the Lease (the "Stipulation"). No mention was made in the Stipulation to treat any rentals under the Lease as administrative expenses pursuant to 11 U.S.C. § 503.

On November 21, 1984, the Stipulation was vacated. On January 10, 1985, this court denied Crovine's motion for relief from stay to terminate the Lease and granted Debtor's request to assume the Lease.

Following assumption of the Lease, Debtor failed to make rental payments to Crovine and to perform other obligations under the Lease. On January 8, 1986, this court ordered Debtor to surrender possession of the Premises to Crovine. During the Chapter 13 case through February 11, 1986, the date on which Debtor vacated the Premises, Debtor was in continuous possession of the Premises.

On July 30, 1986, Debtor's Chapter 13 case was converted to Chapter 11. Crovine was represented by counsel at the conversion hearing and counsel did not object to the conversion.

On January 23, 1987, Crovine filed this Motion for the Claim. Debtor objected to any priority status for the Claim. On February 26, 1987, I heard the matter and took it under submission.

## DISCUSSION

The Claim arises from post-confirmation rental expenses under the Lease. Crovine contends that the Claim should be given priority as an administrative expense under section 503(b)(1)(A) of the Bankruptcy Code which provides that:

    (b) After notice and a hearing, there shall be allowed administrative expenses ... including—

(1)(A) the actual, necessary costs and expenses of *preserving the estate*, including wages, salaries or commission for services rendered after the commencement of the case: (Emphasis added).

As the Ninth Circuit noted in *In re Axton*, 641 F.2d 1262 (9th Cir.1981):

> It is settled law that an allowance for use and occupancy by the trustee, receiver or debtor-in-possession, of premises leased by a bankrupt, debtor, or receiver, is an expense of administration.... *Id.* at 1273.

Debtor responds that the Claim is not an administrative expense under 11 U.S.C. § 503(b)(1)(A). Debtor cites *In re Frank Meador Buick, Inc.*, 59 B.R. 787 (Bankr.W. D.Va.1986), for the proposition that post-confirmation expenses of a debtor are not expenses *incurred to preserve the estate*, and, therefore, such expenses do not qualify as administrative expenses under 11 U.S.C. § 503(b)(1)(A). *Id.* at 791. In *Buick*, the debtor's Chapter 11 plan was confirmed. Later, the debtor became delinquent to the I.R.S. on employee income taxes. The debtor then converted the case to Chapter 7. The I.R.S. requested priority, administrative expense status for the post-confirmation taxes. The court held that because all property of the estate vests in the debtor at the time of confirmation pursuant to section 1141(b) of the Bankruptcy Code, there was no estate to preserve. Accordingly, the taxes were not expenses incurred to preserve the estate. *Id.*

Debtor also cites *In re Barker Medical Co., Inc.*, 55 B.R. 435 (Bankr.M.D.Ala. 1985), for the same legal conclusion. Although a Chapter 11 case, the court in *Barker* did draw a distinction between a Chapter 11 and Chapter 13 case when it stated that

> The future income of a debtor in a Chapter 11 case, quite unlike a Chapter 13 case (see 11 U.S.C. § 1322(a)(1)), is not subject to the supervision and control of a trustee or the court. *Id.* at 436.

Like the *Buick* case, the court held that administration of the estate ended with confirmation of the Chapter 11 plan so that expenses arising post-confirmation were incurred by the debtor at a time when no estate existed. See also *In re Westhold Mfg., Inc.*, 20 B.R. 368 (Bankr.D.Kan.1982) (court denied I.R.S. administrative expense claim for priority for post-confirmation taxes in a Chapter 11 case which was later converted to Chapter 7 because the estate terminated upon confirmation).

Debtor argues that post-confirmation claims in a Chapter 13 should be treated the same way as in a Chapter 11 because the language of 11 U.S.C. § 1327(b) tracks 11 U.S.C. § 1141(b). Both provisions provide for vesting of all property of the estate in the debtor upon confirmation of the plan.

Crovine responds by citing *In re Axton*, *supra*, for the principle that use and occupancy of leased premises by a debtor is an expense of administration. 641 F.2d at 1273. Crovine also contends that the conversion of a case from Chapter 13 to Chapter 11 should not impair an administrative expense claim because 11 U.S.C. § 348(d) excepts administrative expense claims from the rule that pre-conversion claims are to be treated the same as pre-petition claims. Crovine cites *In re Chugiak Boat Works, Inc.*, 18 B.R. 292 (Bankr.D.Alaska 1982) for this conclusion. In *Chugiak*, the debtor converted its case from Chapter 11 to Chapter 7. A creditor sought priority status for the return of a deposit made during the Chapter 11. The court stated that "§ 348(d) specifically excepts from its reach administrative expenses". *Id.* at 294.

In its amended reply in support of its motion for allowance of the Claim as a priority administrative expense, Crovine argues that the Chapter 11 cases cited by Debtor are not applicable in a Chapter 13. Crovine points out that confirmation of a plan in a Chapter 11 case acts as a discharge for the reorganized debtor. This is not the situation with a Chapter 13 debtor because a discharge is not received until the debtor completes the plan or the debtor receives a hardship discharge. 11 U.S.C. § 1328. Crovine further contends that denial of priority status for the Claim would

be inequitable because it was not given an opportunity to object to the plan and the post-confirmation conversion of the Chapter 13 case to Chapter 11 was in violation of section 1307 of the Bankruptcy Code.

Since we are dealing with a post-confirmation claim, Debtor's failure to list Crovine in its schedules is not relevant for purposes of determining the status of the Claim. Additionally, the conversion from Chapter 13 to Chapter 11 does not adversely affect the Claim. If the Claim is an administrative expense, section 348(d) of the Bankruptcy Code preserves the Claim's priority status.

The issue before me is simple. Should I treat the Claim as a priority, administrative expense? During my research, I uncovered two cases which bear directly on this issue. Both cases involve Chapter 13 debtors and post-confirmation claims. The district court in *In re Mason*, 51 B.R. 548 (D.Ore.1985), supports Debtor's position. On the other hand, the bankruptcy court in *In re Root*, 61 B.R. 984 (Bankr.D.Colo. 1986), disagrees with the *Mason* court as is evident from the following statement:

> The Court has studied the case of *In re Mason*, ... and *In re Stark*, 8 B.R. 233 (Bankr.N.D.Oh.1981), upon which the courts in *Mason* rely. Those cases hold that upon confirmation of a Chapter 13 plan, all property of the estate vests in the debtor, and consequently, no estate exists. This Court strongly disagrees. If there is no existing estate upon confirmation, then what does the Chapter 13 Trustee administer? If there is no estate over which the Chapter 13 Trustee has control, then that Trustee is nothing more than an officious intermeddler. *Id.* at 985.

In *Mason*, the district court affirmed the bankruptcy court's judgment that the garnishment of debtor's wages by a creditor did not violate the automatic stay because "title to the property at issue in this action no longer belonged to the 'estate', but was vested in the debtor free and clear of the claims of the preconfirmation creditors". 51 B.R. at 549. The issue before the district court was whether the bankruptcy judge erred in holding that the wages earned by the debtor after confirmation of the Chapter 13 plan were not part of the "estate" because there was no estate in existence after confirmation of the plan. The debtor in *Mason* argued that the law requires the debtor to submit future earnings to the supervision of the court to the extent they are necessary for the execution of the plan. See 11 U.S.C. § 1306(a)(2). Accordingly, the court should protect debtor's income to the extent necessary to allow the debtor to carry out the plan. For this reason, the debtor wanted the court to apply and enforce the automatic stay.

The district court recognized the tension between 11 U.S.C. § 1306 (relied upon by the debtor) and 11 U.S.C. § 1327 (relied upon by the bankruptcy court). Section 1306 of the Bankruptcy Code provides in relevant part:

> (a) Property of the estate includes ...
>
> (2) earnings from services performed by the debtor after the commencement of the case, but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

Section 1327 of the Bankruptcy Code deals with the effect of confirmation and provides in relevant part:

> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

The district court resolved this conflict by concluding "that the debtor's wages go into the estate pursuant to 11 U.S.C. § 1306 as long as the estate exists or until the case is 'closed', dismissed, or converted." *Id.* at 550. And since the estate may, through the plan, cease to exist prior to the case being "closed, dismissed, or converted", the district court found this to be the situation by reason of the plan. Accordingly, it affirmed the bankruptcy court's finding that the estate did not exist and the automatic stay was not in effect. The district court did agree that the debtor's ability to carry out the provisions of the plan should be protected against interference from post-confirmation creditors. However, it be-

lieved this could be accomplished through that provision of the plan which required the debtor to seek permission of the trustee before incurring future credit obligations. Since the creditor did not know of the bankruptcy case and the debtor did not seek permission of the trustee for the credit arrangement, the district court was not moved by the debtor's plea for protection. I am uncertain what the court's holding would have been if the creditor was seeking a priority administrative expense instead of defending an action for violation of the automatic stay.

Because the provisions of the debtor's plan in the *Mason* case were not set out in the opinion, I cannot determine the extent to which the plan required wages of the debtor to carry out the provisions of the plan. The district court does state that the cases cited by the debtor involved plans which withheld vesting of ownership of estate property in the debtor so the estate was not destroyed in those instances. It may be that the court in *Mason* would view Debtor's plan as excepting vesting of ownership of estate property in the Debtor pursuant to section 1327(b) of the Bankruptcy Code. The Plan provides that Debtor's future earnings shall be submitted to the extent necessary to fund the Plan as set forth in a schedule of payments from January 1983 through December 1986. Total payments scheduled under the Plan for this period aggregate $58,750. In addition, the Plan provides for the refinancing of Debtor's home within six months, and the payment of any proceeds to the Chapter 13 trustee for distribution to creditors. The Plan also instructs the Chapter 13 trustee to distribute funds in accordance with the Plan. The Plan calls for unsecured creditors to receive full payment. Based on these facts, I believe *Mason* can be distinguished.

The *Root* case supports Crovine's position. In *Root, supra,* the I.R.S. served a notice of levy upon the debtor demanding payment to the I.R.S. of all attorney fees which the debtor owed his attorney. The I.R.S. had tax claims against the attorney. Debtor claimed that the I.R.S. was in violation of the automatic stay because it was attempting to seize property of the estate. The court stated that

> There must be an estate upon and after confirmation, and that estate consists of the property and future earnings of the debtor dedicated to fulfillment of the Chapter 13 plan. *Id.* at 985.

Debtor was making the payments to the Chapter 13 trustee to satisfy an obligation to his attorney. The court had to decide whether the levy was against property of the estate. If it was, the court indicated that such action would have been a violation of the stay. Since the debtor had paid the Chapter 13 trustee the full amount, the I.R.S. dropped the matter. The *Root* court disagreed with the holding in *Mason* and held that an estate continues to exist postconfirmation and includes those funds which are to be paid from the debtor to the Chapter 13 trustee and distributed by the Chapter 13 trustee to creditors. 61 B.R. at 985. Otherwise, what does the Chapter 13 trustee administer if it is not assets of the estate?

In this case, Debtor needed the Premises to earn funds to pay creditors under the Plan. These earnings became property of the estate pursuant to section 1306 of the Bankruptcy Code. Debtor paid these funds to the Chapter 13 trustee for distribution to creditors under the Plan. The Plan also provided for payment to the Chapter 13 trustee of the proceeds from the refinancing of Debtor's home. Through these provisions of the Plan, Debtor granted the estate rights to these funds (which were necessary to accomplish the purpose of the Plan) and use of the Premises was necessary to generate these funds. Accordingly, the Claim is approved as an administrative expense entitled to priority under section 507 of the Bankruptcy Code.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum opinion shall constitute my findings of fact and conclusions of law.