In re Chester EDWARDS and Darlene Colette Edwards, Debtors.

Bankruptcy No. 91–05907.

United States Bankruptcy Court,
M.D. Tennessee.

Nov. 1, 1995.

J. Robert Harlan, Columbia, Tennessee, for Debtors.

P. Michael Richardson, Trabue Sturdivant & DeWitt, Nashville, Tennessee, for Chrysler Credit Corporation.

Suzanne C. Schulman, Chapter 13 Trustee, Nashville, Tennessee.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

This matter is before the Court on Chester Edwards' ("Debtor") Motion to incur credit in the course of his Chapter 13 case to purchase a new home. Chrysler Credit Corporation ("Chrysler") filed an objection, and a motion to modify the debtor's Plan pursuant to 11 U.S.C. § 1329(a) (Clark Boardman Callaghan, 1995). The motions and objections thereto were presented on oral statements of counsel and of the standing Chapter 13 Trustee. No proof was presented, but the parties sought a determination from this Court as a matter of law whether the disposable income test applied to postconfirmation modifications of the Chapter 13 plan. For the reasons hereinafter cited, the Court finds that the debtor is permitted to incur credit as requested, and that Chrysler's objection and motion are overruled.

Chester and Darlene Edwards filed their Chapter 13 petition on June 17, 1991, and confirmed a Plan on July 29, 1991. The Debtors' Plan provided for a dividend of 48.54% to the unsecured creditors or a base of $65,000.00, whichever was greater. A biweekly contribution of $500.00 was being made by the Debtors at the time of confirmation. The Debtors have remained current on their Plan since 1991. In early August, Mr. Edwards filed a Motion and Notice of Proposed Act to allow the use of credit to purchase a home.[1]

In conjunction with the Motion, the Debtor filed an amended monthly family budget which reflected an increase in Mr. Edward's monthly income. Noting this increase, Chrysler filed an objection to the Debtor's motion. Simultaneously with the objection, Chrysler filed a Motion to Modify pursuant to 11 U.S.C. § 1329(a).[2] The thrust of Chrysler's argument is that debtor's net income has increased $354.00 per month since the time of confirmation, and that those funds should be used to pay a larger dividend to unsecured creditors. Debtor contends that he is not required to modify the Plan to increase the dividend to unsecured creditors, and should be allowed to incur this additional credit, especially since the Plan has remained current since 1991.

Modification of a confirmed Chapter 13 Plan is governed by 11 U.S.C. § 1329. That section provides as follows:

§ 1329. Modification of plan after confirmation.

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1322(c) of this title and the requirements of section 1325(a) of this title apply to any

---

1. Mr. and Mrs. Edwards are now divorced and living separately, and the motion to incur credit is to allow Mr. Edwards to purchase a home.

2. Chrysler is the holder of both a secured and unsecured claim in this case.

modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329 (Clark Boardman Callaghan, 1995).

Chrysler asserts that all of the debtor's newly-found disposable income must be used to fund the plan thereby providing the unsecured creditors with a larger payment dividend for the months remaining under the Plan. According to Chrysler's argument, the disposable income test would apply to postconfirmation modifications even though § 1325(b) is not among the sections listed in § 1329. The Debtor, however, argues that the disposable income test does not apply to postconfirmation plan modifications because it is not one of the requirements specifically listed in § 1329.

The application of the § 1325(b)'s disposable income test to postconfirmation modifications is largely unsettled. Several courts have held that a debtor's disposable income should not be re-examined in order to allow or disallow a plan modification. *In re Anderson,* 153 B.R. 527 (Bankr.M.D.Tenn.

1993); *In re Moss,* 91 B.R. 563 (Bankr. C.D.Cal.1988). The *Moss* and *Anderson* decisions are based upon the strict language of § 1329(b)(1) which does not include § 1325(b)'s disposable income test as a requirement for postconfirmation modification.[3]

However, other bankruptcy judges have found the question of whether the disposable income test applies to plan modifications to be less clear. *In re Klus,* 173 B.R. 51, 58 (Bankr.D.Conn.1994) (noting in a footnote that § 1325(a) requires compliance with all provisions of Chapter 13, and therefore the disposable income test is arguably implicated for postconfirmation modifications); *In re Solis,* 172 B.R. 530 (Bankr.S.D.N.Y.1994) (finding once a determination has been made that a modification is warranted, plan as modified must have been proposed in good faith and meet the ability to pay test).[4]

Congress probably intended the disposable income test to apply to postconfirmation modifications as a matter of policy. For example, if a debtor encounters some hardship which requires a reduction or suspension in plan payments, the Code has provided the debtor with the means to allow that reduction or suspension. Likewise, it would seem that if a debtor benefits from some income windfall, that the creditors should be allowed to share in that newly found income during the course of the Plan. It is unlikely that Congress intended the debtor to enjoy financial good fortune, but that unexpected fortune would not be shared among the prepetition creditors.[5]

3. *See also In re Woodhouse,* 119 B.R. 819 (Bankr. M.D.Ala.1990). In that case, the Court found that:

> unless there are substantial unanticipated changes in the debtor's ability to pay under a plan already confirmed, the rights of the debtor and his creditors are settled at the date of confirmation, and ought not to be disturbed in modification proceedings relating to disposable income.

*Woodhouse,* 119 B.R. at 820; *In re Grissom,* 137 B.R. 689 (Bankr.W.D.Tenn.1992) (finding that where no creditor objected at confirmation and therefore no inquiry was made into the disposable income of the debtor, confirmation order had binding res judicata effect and inquiry into disposable income at modification would be inappropriate).

4. *See also* 5 L. King, COLLIER ON BANKRUPTCY, 1329.01 at 1329–9 (15th ed. 1994) ("The omission of 11 U.S.C. § 1325(b) from the list in 11 U.S.C. § 1329(b)(1) was probably legislative oversight. It is hard to imagine that Congress, having decided to impose the ability-to-pay test, would not also impose it as to plan modifications."); Lundin, Keith M., CHAPTER 13 BANKRUPTCY, vol. 2, § 6.45 at 6–134 to 137.

5. *See Arnold v. Weast (In re Arnold),* 869 F.2d 240 (4th Cir.1989) (court granted unsecured creditor's motion to increase plan payments over debtor's objection where debtor's income unexpectedly increased from $80,000.00 to $200,-000.00 yearly, but did not specifically address the application of the disposable income test); *In re Koonce,* 54 B.R. 643 (Bankr.D.S.C.1985) (plan

Judge Keith M. Lundin, in his Chapter 13 treatise, noted at least two anomalies with the practical application of the disposable income test to postconfirmation modifications. Any attempt to modify the plan to increase the dividend to creditors made after the Plan is more than two years old runs head-on into the language of 11 U.S.C. § 1329(c):

> Upon objection by the trustee of the holder of an allowed unsecured claim, the disposable income test requires the debtor to pay the objecting claim holder in full or the plan must provide that all of the debtor's projected disposable income for three years be applied to make payments under the plan. . . .
>
> [C]ounting the three-year period in the disposable income test from the date the first payment is due under the modified plan would preclude approval of modification of a plan that is already more than two years old. Section 1329(c) clearly states that the court may not approve a modified plan that calls for payments after five years after the first payment was due under the original confirmed plan.

LUNDIN, § 6.45 at 6–134 to 137. In other words, if a plan is more than two years old when modified, and the unsecured creditors are not to be paid in full, then the disposable income test and § 1329(c)'s time requirement cannot be complied with simultaneously.

Secondly, upon an objection by the trustee or an unsecured claimholder at confirmation, the disposable income test requires the Court to project future income. If no objection is raised at confirmation then future income is not projected. If future income is not projected then § 1325(b) does not require the debtor to commit unprojected income to the plan. In other words, if there is no projection of future income at confirmation then

there is no binding statutory requirement which requires the debtor to commit unprojected income to the plan.[6] *Id.* In this district, however, this has no impact because the Chapter 13 trustee requires debtors to commit all disposable income to their plans.

Whether the disposable income test even applies, however, is academic if neither Chrysler nor the Debtor can prove that their respective motions are even warranted. The procedural posture of this case is somewhat unusual in that the debtor requested permission to incur credit, and Chrysler then filed an objection to the debtor's motion, along with the motion to modify under § 1329. It is therefore, Chrysler's initial burden to demonstrate that its modification of the plan is warranted, and the debtor's burden to show that his motion to incur credit is appropriate.[7] *See In re Rimmer,* 143 B.R. 871 (Bankr.W.D.Tenn.1992); *In re Perkins,* 111 B.R. 671 (Bankr.M.D.Tenn.1990); *In re Haas,* 76 B.R. 114 (Bankr.S.D.Ohio 1987).

There appears to be considerable disagreement on whether § 1329 empowers modification, or whether because of the principals of res judicata, the movant must make a threshold showing of an unanticipated, substantial change in the debtor's financial circumstances as a prerequisite to modification. In this district, however, that issue is settled. In *In re Perkins,* the Court addressed the moving party's burden and the standards for postconfirmation modification:

> Section 1329(b)(1) fully circumscribes the standards for confirmation of a plan modification offered by an allowed unsecured claimholder or the trustee. The proponent of modification must satisfy the tests in "Sections 1322(a), 1322(b) . . . 1322(c) . . . and the requirements of 1325(a) . . ." Changed circumstances or unanticipated

---

payments increased to pay unsecured creditors a 100% dividend on trustee's motion where debtor won $1.3 million in state lottery); *In re Powers,* 140 B.R. 476 (Bankr.N.D.Ill.1992) (court granted trustee's motion to increase plan payments to pay unsecured creditors 100% following a postconfirmation sale which would have allowed payments to be completed under an original 15 month plan).

6. Judge Lundin also notes that if the projected disposable income test continues to be applied every time there is a motion to modify, then the concept of projected income becomes "meaningless" because projected income will be what the debtor's income actually is at the time. *Id.*

7. Although definitely not a custom-fit, the debtor's motion to incur credit should be treated as a motion to modify under § 1329. *See* Lundin, Keith M., CHAPTER 13 BANKRUPTCY, vol. 2, § 6.52.

events after confirmation of the original plan may be evidence relevant to one or more of the listed standards. Changed circumstances, unanticipated or otherwise, is not imposed by the Code as a threshold barrier to access to modification under § 1329.

*Perkins,* 111 B.R. at 673. It is clear, at least in this district, that the only prerequisites are those contained in the Code itself.

 At the hearing on these matters, Chrysler presented no evidence relative to any of the requirements of sections 1322(a), 1322(b), 1322(c) or 1325(a). The only evidence presented by Chrysler was that the debtor had experienced an increase in his net monthly income. The Court heard no testimony. The Trustee, who did not oppose the debtor's motion indicated that a 100% dividend to unsecured claimholders was not feasible. No proof was heard about 1325(a)'s good faith requirement, and Chrysler provided no indication that the debtor had the ability to pay under the plan it proposed. In other words, whether the modification as put forth by Chrysler meets all of the prerequisites of 1329, irrespective of whether the disposable income test is among those prerequisites, is a mystery to the Court. Chrysler, therefore, failed to carry its burden as the movant for modification under § 1329.

 A completely separate matter is the debtor's motion to incur credit. Because Chrysler objected to that motion, the debtor was responsible for demonstrating to the Court the appropriateness of that remedy. Debtor seeks to incur $101,738 in order to purchase a house, and proposes to pay the monthly mortgage payments outside of the plan. The plan as it was confirmed will remain unchanged, and no creditor will be adversely affected. The plan length, which has just a few months remaining at this point, will not be increased, and the debtor's

payroll deduction would not be decreased. In other words, the creditors are receiving absolutely the same treatment that they were afforded at confirmation, and no creditor, including Chrysler, objected to the confirmation of this plan.[8]

The facts of this case are most similar to the situation in *In re Grissom,* 137 B.R. 689 (Bankr.W.D.Tenn.1992). In both instances, no objection to confirmation was raised, but the creditors requested application of the disposable income test to a postconfirmation modification. The Court in *Grissom* reasoned that because there had been no objections raised at confirmation, it would not "go back now and conduct a disposable income inquiry." It explained that:

> the absence ... of an objection to confirmation at the time of the original confirmation order[ ] vitiates the need for consideration of whether any post-confirmation tax refunds are disposable income. If there had been objections to confirmation, the Court at that time might have determined that as a part of disposable income for three years, the debtors would be required to commit their future tax refunds to the plan.... [H]owever, there were no disposable income inquiries prior to the confirmation because of the absence of objections to confirmation.
>
> This unsecured creditor can not evade now the binding effect of confirmation under § 1327 and the absence of objections to the original confirmation[ ]. The time to require the application of the disposable income test is established by § 1325(b) as being at the confirmation hearing, and it application is triggered in only one way, that is by filing an objection to the plan's confirmation.

*Grissom,* 137 B.R. at 691.[9]

Because there was no objection by Chrysler to the treatment it was initially afforded

---

8. The Court would also note that the debtors voluntarily extended their plan two years past the required three years to provide maximum payout to their creditors. Had they not done this for the benefit of all of their creditors, including Chrysler, they would have long since completed their plan, and be out of bankruptcy court.

9. *In re Anderson,* 153 B.R. 527 (M.D.Tenn.1993) held that "[a]ccording to section 1329(b)(1) ... compliance with section 1325(b) is not required for post-confirmation modification of a Chapter 13 plan." *Id.* at 529. In that case, it is not clear whether there had been any initial objection to confirmation. The Court made this remark about sections 1329 and 1325 as an alternative

under the originally confirmed plan, and therefore no disposable income inquiry was conducted, the Court overrules Chrysler's objection to the debtor's motion to incur credit. In short plain terms, because the disposable income test was not called into play at confirmation, the Court will not now make it an additional requirement to modification of this plan. The treatment afforded to the creditors has not changed. To do so would be to allow Chrysler to evade the binding effect of the confirmation order in contravention of § 1327(a), and impose an additional requirement to modification that was not imposed upon confirmation.

For all the reasons hereinabove stated, the Court denies Chrysler's Motion to Modify the Plan pursuant to § 1329. Furthermore, the Court grants the debtor's Motion to Incur Credit, and overrules Chrysler's objection to that motion.

It is, THEREFORE, so ordered.

holding, without analysis of this complicated is- sue.