**In re Bonnie Gloria CHERRY, Debtor.**

**Bankruptcy No. 82–21239.**

United States Bankruptcy Court,
W.D. New York.

April 25, 1988.

Robert Epstein, Rochester, N.Y., for creditor.

Herman Kestenblatt, Rochester, N.Y., for debtor.

George M. Reiber, Rochester, N.Y., trustee.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

A creditor, Belle Epstein, has moved the Court for an Order directing the Chapter 13 Trustee to disburse surplus funds in his possession.

This case was commenced on October 29, 1982, by the filing of a Chapter 13 petition and Plan. The filing was aimed, principally, at staving off foreclosure of a mortgage against the Debtor's residence. By Order of February 2, 1983, the Debtor's Chapter 13 Plan was confirmed. The Plan proposed repayment in full of pre-petition mortgage arrears which, as of the time of filing, totalled $2,715.00. The arrears were to be brought current through $25.00 bi-weekly wage deductions remitted to the Trustee. The Plan proposed no repayment of unsecured claims.

During the pendency of the Plan, wage deductions totalling $1,465.00 were disbursed by the Chapter 13 Trustee in satisfaction of the mortgage arrears, leaving a balance of $1,250.00 unpaid. In 1985, however, when defaults in the payment of post-petition mortgage installments ensued, the mortgagee, Ms. Epstein, resumed efforts at foreclosure. On July 2, 1985, an *ex parte* Motion was filed by Ms. Epstein, with the necessary consents annexed, and an Order issued directing the Trustee to abandon his interest in the Debtor's residence. Thereafter, the residential property was transferred by the Debtor to WGH Investments ("WGH") which, in exchange, satisfied the balance on the mortgage due Ms. Epstein. A discharge of mortgage was subsequently executed by Ms. Epstein and recorded.

Following transfer of the Debtor's residence to WGH, and presumably due to inadvertence, wage deductions continued to be made from the Debtor's pay and remitted to the Trustee.[1] In all, the Trustee accumulated approximately $1,250.00 in surplus funds. On June 4, 1987, Ms. Epstein filed this Motion seeking to acquire the surplus. Ms. Epstein argued that the surplus should be applied in satisfaction of post-petition property taxes, totalling $1,326.75, that she was required to pay to preserve her security in the Debtor's residence. The Debtor cross-moved, also claiming entitlement to the surplus.

Ms. Epstein first theorizes that her claim for post-petition tax outlays should be accorded secured status to the extent of the pre-petition mortgage arrears ($1,250.00) not paid through the Chapter 13

---

1. The Wage Order was finally vacated by Order of January 20, 1988.

Plan. The Debtor responds, and the Trustee concurs, that upon payment to Ms. Epstein by WGH of the amount she demanded, the mortgage was extinguished and her security relinquished.

Under New York law, a mortgage is a lien against property and payment made after the mortgage has come due, but before its foreclosure, extinguishes the lien. 38 NY Jur. Mortgages and Deeds of Trust § 247. The discharge of mortgage executed by Ms. Epstein buttresses this position since it implied a consent to destruction of the security. *Id.* at § 272. Accordingly, whatever rights Ms. Epstein may have against the surplus, they are not the rights of a secured claimant.

Ms. Epstein next argues that even if she is no longer secured, payment to her of the surplus should be compelled through a post-confirmation modification of the Debtor's Plan. Such a modification would result in distribution of the surplus to unsecured creditors, of whom Ms. Epstein is 85% claimholder in amount.

■ This Court has previously decided that *only* a debtor may initiate a post-confirmation modification where, as here, the Chapter 13 Plan had been confirmed prior to implementation of the 1984 Bankruptcy Amendments. *In re Tschiderer*, 73 B.R. 133, 135 (Bkrtcy.W.D.N.Y.1987). Accordingly, Ms. Epstein is without standing to request a modification of the Debtor's Plan. Finally, Ms. Epstein argues that, "at the very least, [she is] equitably entitled to the money." A review of the facts, however, counsels a contrary conclusion.

■ If the Wage Order had been vacated timely, i.e., when the Debtor's interest in the residential property was transferred to WGH and the mortgage satisfied, then a surplus would not have accumulated. Instead, monies remitted to the Trustee would have been paid to the Debtor as wages. Ms. Epstein should not reap the benefit of this administrative oversight and be allowed to recover the windfall. The parties should be placed in the position they would have occupied had the Wage Order not continued. So situated, Ms. Epstein would have been left to recoup her post-petition tax expenditures by adding an appropriate amount to the mortgage close-out balance. Having failed to do so, and executing a discharge of mortgage nonetheless, she should not be permitted a cure of her nearsightedness by resort to the surplus.

No persuasive legal theory has been advanced to support Ms. Epstein's claim of entitlement to the surplus, and the equities overwhelmingly favor the Debtor. Accordingly, the Motion is denied with instructions that the Trustee remit the surplus to the Debtor and it is so ordered.