**In re Bernardo FRAUSTO, Debtor.**

**EconoLube N' Tune, Inc., Plaintiff,**

**v.**

**Bernardo Frausto, Defendant.**

**Bankruptcy No. 96–06471–BGC–13.
Adversary No. 00–00129.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Dec. 12, 2000.

David Anderson, Birmingham, AL, for plaintiff.

Richard Shuleva, Birmingham, AL, for defendant.

Charles Denaburg, Birmingham, AL, for Compass Bank.

Richard Vincent, Birmingham, AL, for trustee.

## MEMORANDUM OPINION

BENJAMIN COHEN, Bankruptcy Judge.

The matters before the Court are EconoLube's *Writ of Garnishment* and *Notice to Defendant of Issuance of Writ of Garnishment* (against the Chapter 13 Trustee) filed on September 12, 2000; the *Trustee's Answer and Motion to Quash Writ of Garnishment* filed on September 14, 2000; and EconoLube's *Motion to Enforce Garnishment, or, in the Alternative Motion to Reconsider Ruling on Administrative Claim for Marshaling, or, to Convert Case to Chapter 7* filed on October 10, 2000. After notice, a hearing was held on October 25, 2000. Richard Shuleva, attorney for the Defendant–Debtor; David Anderson, attorney for the Plaintiff; Charles King, Assistant Chapter 13 Trustee; David Rogers, Jr., the Chapter 13 Trustee; Charles Denaburg, attorney for Compass Bank; Richard Vincent, Special Attorney for the Trustee; and Jon Dudeck, attorney for the Bankruptcy Administrator, appeared.

### I. Background

EconoLube and the debtor entered into a post-confirmation franchise agreement. Because of the debtor's failure to make all payments due under that agreement, EconoLube sought, and obtained, a judgment against the debtor.

The current matters before the Court involve EconoLube's second attempt to collect that judgment. In its first attempt, EconoLube contended that it had an administrative expense claim against the debtor because, as EconoLube argued, revenue from the debtor's franchise operation funded the debtor's plan payments to pre-petition creditors. EconoLube also argued that its judgment represented costs that were actual and necessary expenses of preserving the bankruptcy estate. EconoLube concluded that its administrative expense claim should be satisfied from $100,000 being held by the Chapter 13 trustee, funds obtained by the debtor and the trustee in a post-confirmation settlement of a pre-petition cause of action involving an unrelated creditor of the debtor.

On October 4, 2000, this Court denied EconoLube's request for the administrative expense finding that the debtor's bankruptcy estate did not include, and could not have included, any future benefits the debtor could have gained from any post-confirmation business operations, including the EconoLube franchise.[1] The Court found first, that the estate included only the assets required to make the confirmed plan payments, and second, that there was no estate other than that which was, and has continued to be, funded by those plan payments.[2] The Court concluded that there were no costs to EconoLube that could now be considered actual, necessary costs and expenses of preserving *that* estate and therefore there was no bankruptcy estate that could have, or did, benefit from the EconoLube franchise; hence, there could be no administrative expense claim against this estate.

### II. Findings of Fact

The facts are not disputed.[3] The debtor filed the pending Chapter 13 case on Sep-

---

1. *Order Denying Request for Administrative Expense*, entered October 4, 2000, Proceeding No. 58 in the main case, relying on *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333. .

2. The Court found the estate assets to include only the debtor's 60 monthly plan payments

of $4,500 to be harvested from monthly disposable income of $7,200.

3. The Court adopts and modifies its October 4, 2000, *Findings of Fact*. See *Order Denying*

tember 16, 1996. According to his uncontested schedules, he had monthly income of about $16,800 and monthly expenses of about $9,500.

At confirmation, the debtor's schedules established disposable monthly income of $7,207.50. The Chapter 13 Trustee's "bench sheet" summarizing debts to be paid through the plan showed those debts to be $187,000. From that information, and the debtor's proposal of a 60-month plan, the trustee recommended monthly Chapter 13 plan payments of $4,500. Based on the schedules and the recommendation of the Chapter 13 Trustee, the Court confirmed the debtor's plan of reorganization on November 7, 1996. *Order of Confirmation,* entered November 7, 1996, Proceeding No. 5 in the main case.

Approximately 18 months after confirmation, the debtor entered into a franchise agreement with EconoLube n' Tune, Inc. to operate an EconoLube franchise in San Antonio, Texas. When the debtor "breached" the franchise agreement and other contracts with EconoLube, EconoLube sought and obtained relief from the automatic stay to pursue the debtor in Texas state court. *Order Modifying Automatic Stay,* entered June 14, 2000, Proceeding No. 48 in the main case.

During this same time, the movant filed a complaint in this Court on May 30, 2000, seeking damages for the same or similar defaults. The debtor did not answer that complaint. On August 23, 2000, and without opposition from the debtor, this Court entered a default judgment against the

debtor for $94,438.09. *Final Judgment,* entered August 23, 2000, Proceeding No. 10 in Adversary Proceeding No. 00–00129.

Also, during this same time, the Chapter 13 Trustee and Richard Vincent, special counsel to the trustee, entered into an agreement with Doctor's Associates, Inc. and Subway Restaurants, Inc. and others compromising and settling alleged claims of the debtor against those corporate parties.[4] That settlement, filed with this Court on July 19, 2000, provided that the defendants in a pending Alabama state court lawsuit would pay the Chapter 13 trustee in this case, $100,000. *Agreement of Compromise and Settlement and Mutual Release,* filed July 19, 2000, Proceeding No. 51 in the main case. After the Court approved that agreement on May 2, 2000, those funds were paid to the trustee on June 5, 2000, and are on deposit in an interest bearing account.[5]

The $100,000 Subway settlement was the result of a complaint filed in state court in 1994 by the special counsel (then counsel for the debtor); however, when the debtor filed this Chapter 13 case on September 16, 1996, he did not list the suit. On April 29, 1999, the debtor did amend his petition to include the cause of action. *Petition to Modify,* filed April 29, 1999, Proceeding No. 22 in the main case.

On May 30, 2000, EconoLube filed a *Motion for Allowance of Administrative Expense and to Prohibit Distributions from the Estate.* On August 14, 2000, Compass Bank, a pre-petition creditor of the

---

*Request for Administrative Expense* at 1–2, entered October 4, 2000, Proceeding No. 58 in the main case.

4. Note 1 to the October 4 order read, "These matters are not related to the EconoLube matters."

5. Note 2 to the October 4 order read:

The parties to the agreement filed a *Joint Motion for Approval of Compromise and Settlement with Doctor's Associates, Inc.* on

March 22, 2000. Proceeding No. 34 in the main case. That motion provided for the $100,000 payment to the trustee. A hearing on the motion was held on April 17, 2000. The parties formally entered into the agreement on May 2, 2000. The Court entered an order on May 2, 2000, approving the motion and compromise. Proceeding No. 38 in the main case. A copy of the agreement with original signatures was filed in this case on July 19, 2000. Proceeding No. 51 in the main case.

debtor, filed an *Objection to Request for Administrative Claim.*

On October 4, 2000, the Court denied EconoLube's motion and sustained the bank's objection.[6] In that order the Court found, based on the November 7, 1996, confirmation order and events leading to it, that after confirmation only the debtor's 60 monthly payments of $4,500 (to be harvested from monthly disposable income of $7,200) remained property of the bankruptcy estate. The Court concluded that the estate did not include, and could not have included, any future benefits the debtor could have gained from any post-confirmation business operations, including the EconoLube franchise.[7] The Court then found that there was no estate other than that which was, and has continued to be, funded by the debtor's $4,500 payments.[8] As to the specific question of an administrative expense, the Court concluded that there were no costs to EconoLube that could now be considered actual, necessary costs and expenses of preserving the estate. Simply put, the Court found that there was no bankruptcy estate that could have, or did, benefit from the EconoLube franchise and thus no administrative expense claim could attach to the estate.[9]

In the meantime, on September 12, 2000, EconoLube filed its *Notice to Defendant of Issuance of Writ of Garnishment* (against the Chapter 13 Trustee) and its *Writ of Garnishment* contending that its $94,438.09 judgment should be satisfied from the $100,000 being held by the trustee. The trustee responded on September 14, 2000, with his *Trustee's Answer and Motion to Quash Writ of Garnishment.*

On October 10, 2000, EconoLube filed its *Motion to Enforce Garnishment, or, in the Alternative Motion to Reconsider Ruling on Administrative Claim for Marshaling, or, to Convert Case to Chapter 7.*[10]

## III. Contentions

In support of its garnishment action, EconoLube contends that its garnishment should be enforced against the trustee and satisfied with the $100,000 because the $100,000 is not property of this estate. EconoLube relies on this Court's October 4 opinion and order.

Compass Bank, a pre-petition creditor of the debtor, (and one who opposed EconoLube's administrative expense claim based on the same "property of the estate" argument), opposes EconoLube's claim to the

**6.** *Order Denying Request for Administrative Expense,* entered October 4, 2000, Proceeding No. 58 in the main case.

**7.** The Court also found that EconoLube failed to satisfy its burden under section 503(b) of the Bankruptcy Code. 11 U.S.C. § 503(b). EconoLube did not prove that the costs to EconoLube were actual, necessary costs, and expenses of preserving the bankruptcy estate. And particularly EconoLube did not prove that there was a bankruptcy estate that these costs preserved.

**8.** The debtor's plan payments corroborated the Court's prognostication. From the filing of this case up to the October 4 order, the debtor made one monthly payment of $3,500.00 and 34 monthly payments of $4,500.00 totaling $156,500.00. And while the total amount that should have been made during that time was $174,500.00, clearly, based on the amount paid, the debtor had the financial ability, (and continued to have that ability after entering into, (and independent

of), the EconoLube franchise) to make the substantial plan payments required by confirmation.

**9.** Two cases reviewed by the Court prior to entering the October 4 order supported EconoLube's position. See *Security Bank v. Neiman,* 1 F.3d 687 (8th Cir.1993) and *In re Martin,* 73 B.R. 721 (Bankr.C.D.Cal.1987). However, the Court found both cases to be based on holdings that a post-confirmation estate consists of more that is recognized in this Circuit.

**10.** Based on its October 4, 2000, order the Court finds that EconoLube's alternative motion for this Court to reconsider its October 4 order is due to be denied. Similarly, based on that order and the instant order, the Court finds that EconoLube's alternative motion to have this case converted to one under Chapter 7 is due to be denied. Consequently, of the three parts of EconoLube's compound motion, only the garnishment issue is discussed in this opinion.

$100,000.[11]

The trustee disagrees with EconoLube and agrees with Compass Bank.

The debtor is neutral, as he was in the prior matter.

## IV. Conclusions of Law

EconoLube's garnishment against the Chapter 13 Trustee should be enforced because: A. the $100,000 being held by the trustee is not property of this estate; and B. Chapter 13 does not authorize collection, liquidation, and distribution of the $100,000.

### A. Property of the Estate

■■■ In its October 4 order this Court did not consider whether the $100,000 was property of this bankruptcy estate. However, consistent with its findings in that order, and based on the discussion below, the Court concludes now that the $100,000

is *not* property of this estate.[12] Consequently, as a post-confirmation creditor, EconoLube is free to pursue whatever assets vested in the debtor at confirmation, including the $100,000 proceeds from the debtor's pre-petition lawsuit.[13] In contrast, as a pre-petition creditor subject to the Court's confirmation order entered November 7, 2000, Compass Bank is bound by the debtor's confirmed plan and must accept its payment through that plan.

### 1. Property of the Estate Under Section 541

Section 541(a)(1) of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In Chapter 13 cases, "property of the estate" also includes all legal or

11. In its October 4 order this Court wrote:

> Compass Bank, a creditor of the debtor, objects to the administrative expense claim. Compass contends that most of the property of the estate vested in the debtor at confirmation and therefore there was no estate to be preserved through operation of the EconoLube franchise.
>
> . . . . . . . . . . . . .
>
> The Court agrees with Compass Bank. In this Circuit, a Chapter 13 post-confirmation estate consists of only the amount necessary to make the required plan payments. In this case, that amount is 60 monthly plan payments of $4,500.

Order Denying Request for Administrative Expense at 2, entered October 4, 2000, Proceeding No. 58 in the main case.

12. The Court recognizes that the order accompanying this opinion follows: (1) the Court's approval of special counsel for the trustee in regard to the now $100,000 settled lawsuit, (see Order Approving Employment, entered July 12, 1999, Proceeding no. 24 in the main case); (2) the Court's approval of the Joint Motion for Approval of Compromise and Settlement settling that lawsuit and providing for the $100,000 payment to the trustee, (see Order, entered May 2, 2000, Proceeding No. 38 in the main case); (3) the Court's approval of the First Interim Application of the special counsel as fees and expenses for work in that lawsuit (see Order, entered June 19, 2000, Proceeding No. 49 in the main case); and (4) the Court's directive to the

trustee to disburse that compensation to the special counsel, (see Order, entered October 31, 2000, Proceeding No. 20 in Adversary Proceeding No. 00–00129.)

But the Court also recognizes that in contrast to the pending matters, no objections were made to any of the above. The issues of whether the debtor's lawsuit or proceeds from that lawsuit were property of this estate were not raised. Consequently, this Court did not consider those issues in any of the above orders as it would have neither the authority, nor inclination, to do so. And, as a practical matter, even if those issues had been raised, under the instant order all parties will be in the same positions they would have been had the issues addressed in this order been raised and addressed in connection with those earlier matters.

In addition, there are no jurisdictional issues now. The money being held is in the possession of the Chapter 13 Trustee. This Court must assume that it, and no other court, has the first right to decide the disposition of that money.

13. On June 19, 2000, this Court allowed (with the consent of all interested parties attending a hearing on that matter) the application of the special attorney Richard Vincent for $15,520 in compensation for work performed in obtaining the $100,000. On October 31, 2000, this Court ordered the Chapter 13 Trustee to disburse $15,520 to Mr. Vincent. The balance therefore being held by the Chapter 13 Trustee is $84,480.

equitable interests of the debtor in property "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." 11 U.S.C. § 1306(a).

## 2. Effect of Confirmation on Property of the Estate

Confirmations in Chapter 13 cases establish specific relationships between debtors and creditors and among creditors. The three subsections of section 1327 of the Bankruptcy Code explain these relationships. Subsection 1327(a) reads, "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Subsection 1327(b) reads, "Except as otherwise provided for in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). And subsection 1327(c) reads, "Except as otherwise provided for in the plan or the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan." 11 U.S.C. § 1327(c).

█ This statutory scheme is simple and unambiguous. It provides for the payment of claims out of future earnings, in lieu of payment from property which a debtor either owns when filing bankruptcy or acquires afterwards. As a result, at confirmation all such property vests in the debtor. At that time, the debtor's prepetition creditors lose their claims to, or interest in, that property, whether the property was acquired by the debtor before or after filing bankruptcy. And after

confirmation, they are bound to accept the periodic payments provided for under the terms of the debtor's confirmed plan in full satisfaction of their claims.

Writing for the Court of Appeals for the Eleventh Circuit in *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1340 (11th Cir.2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 765, 148 L.Ed.2d 666 (2000), Senior Circuit Judge Phyllis A. Kravitch explained, "after confirmation, only the amount required for the plan payments remained property of the estate." In reaching that conclusion, the court in *Telfair* adopted what is referred to as the "estate transformation approach" for determining what property remains in a bankruptcy estate after confirmation. That approach, Judge Kravitch proclaimed for the court, "should be the law of this circuit." *Id.* And as recognized by the court, that law is straightforward.

█ The "estate transformation approach" mandates that following confirmation, only that property necessary for the execution of the plan remains property of the bankruptcy estate. *Id.* at 1340. Again for the court, Judge Kravitch wrote:

> We therefore echo the conclusion of the Seventh Circuit and "read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan."

*Id.* (quoting *Black v. United States Postal Service (In re Heath)*, 115 F.3d 521, 524 (7th Cir.1997)).[14]

At confirmation in this case, the debtor's schedules established disposable monthly income of $7,207.50. The Chapter 13

14. This conclusion is compelled also by subsection (f)(1)(A) of section 348 of the Bankruptcy Code. In a case converted from Chapter 13 to Chapter 7, that section excludes from "property of the estate" any property which the debtor disposed of after the Chap-

ter 13 petition was filed and before conversion, as well as any property acquired by the debtor after the Chapter 13 petition was filed. "[W]hen a case under chapter 13 of this title is converted to a case under another chapter of this title ... property of the estate in the

trustee's "bench sheet" summarizing debts to be paid through the plan showed those debts to be $187,000. From that information, and the debtor's proposal of a 60–month plan, the trustee recommended monthly Chapter 13 plan payments of $4,500. The Court agreed and the debtor's plan was confirmed on November 7, 1996.

Based on the above, and after considering *Telfair*, in its October 4 order this Court concluded that after confirmation only the debtor's 60 monthly payments of $4,500 to be harvested from monthly disposable income of $7,200 remained property of his bankruptcy estate. The Court reaches that same conclusion here. Under *Telfair* and section 1327(b), all of the property the debtor owned when his case was confirmed (other than that, "necessary to the fulfillment of the plan,") vested in the debtor at confirmation. That property included the now settled lawsuit, the proceeds of that suit, and any property the debtor acquired after confirmation that was also not "necessary to the fulfillment of the plan." Thus, pursuant to section 1327(c), neither the lawsuit (nor any proceeds from it) can now be considered property of this bankruptcy estate.[15]

### 3. Pre-petition Creditors

Because the disputed property is not property of the estate, it is free and clear

converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion ...." 11 U.S.C. § 348(f)(1)(A). Section 348(f)(1)(A) is a clear recognition that upon confirmation, a debtor is free to exercise all rights of ownership in property, including the right to dispose of that property, and that creditors may not look to that property for the payment of their claims or otherwise dictate how that property may be dealt with or disposed of by the debtor.

**15.** The conclusion that the $100,000 is not property of this bankruptcy estate, or, more accurately, the conclusion that the debtor's pre-petition creditors have no rights to or expectancy of recovery from the $100,000, is compelled by the opinion in *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1340 (11th Cir.2000). And that opinion is supported by the majority of the published cases addressing these issues.

Courts in one line of cases have determined that no "property of the estate" exists in a Chapter 13 case following confirmation, that is, pre-petition creditors are bound by the confirmed plan to accept payments under the plan; all property, whether acquired pre-petition or post-petition, vests, upon confirmation, in the debtor free and clear of the claims of those creditors; and, following confirmation, pre-petition creditors have no rights to or expectancy of recovery from that property. *Shell Oil Co. v. Capital Fin. Servs.*, 170 B.R. 903, 905 (S.D.Tex.1994); *Laughlin v. United States Internal Revenue Service*, 98 B.R. 494, 496 (D.Neb.1989), *aff'd on other grounds*, 912 F.2d 197, 202 (8th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); *Mason v. Williams (In re Mason)*, 51 B.R. 548, 550 (D.Or.1985); *Ford Motor Credit Co. v. Feher (In re Feher)*, 202 B.R. 966, 971 (Bankr.S.D.Ill.1996); *Oliver v. Toth (In re Toth)*, 193 B.R. 992, 997 (Bankr.N.D.Ga. 1996); *In re Rhodes*, 1995 WL 128486 (Bankr.D.Idaho March 2, 1995); *Lambright v. United States (In re Lambright)*, 125 B.R. 733, 735 (Bankr.N.D.Tex.1991); *In re Daugherty*, 117 B.R. 515, 518 (Bankr.D.Neb.1990); *In re Petruccelli*, 113 B.R. 5, 16 (Bankr.S.D.Cal. 1990); *In re Rutt*, 98 B.R. 490, 492 (Bankr. D.Neb.1988), *aff'd sub. nom.*, *Laughlin v. United States Internal Revenue Service*, 98 B.R. 494, 496 (D.Neb.1989), *aff'd on other grounds*, 912 F.2d 197, 202 (8th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); *In re Dickey*, 64 B.R. 3,4 (Bankr.E.D.Va.1985); *Mason v. Williams (In re Mason)*, 45 B.R. 498, 500 (Bankr.D.Or.1984), *aff'd*, 51 B.R. 548 (D.Or. 1985).

A second line of cases, which include the *Telfair* decision, have held that "property of the estate," after confirmation, consists only of the funds paid by the debtor, or required under the plan to be paid by the debtor, to the trustee each month. All other wages not committed to funding the plan, and other property, whether acquired pre-petition or post-petition, vests, upon confirmation, in the debtor free and clear of the claims of pre-petition creditors, and, following confirmation, pre-petition creditors have no rights to or expectancy of recovery from that property. *Black v. United States Postal Service (In re Heath)*, 115 F.3d 521, 524 (7th Cir.1997); *United States Postal Service v. Black (In re Heath)*, 198 B.R. 298, 305 (S.D.Ind.1996), *aff'd*, 115 F.3d 521 (7th Cir.1997); *Strong v. Internal Revenue Service (In re Strong)*, 203 B.R. 105, 115 (Bankr.N.D.Ill.1996); *In re Lea-*

*vell,* 190 B.R. 536, 539 (Bankr.E.D.Va.1995); *In re O'Brien,* 181 B.R. 71, 74 (Bankr.D.Ariz. 1995); *In re McCray,* 172 B.R. 154, 156 (Bankr.S.D.Ga.1994); *In re Thompson,* 142 B.R. 961, 964 (Bankr.D.Colo.1992); *American General Fin., Inc. v. McKnight (In re McKnight),* 136 B.R. 891, 893 (Bankr.S.D.Ga. 1992); *In re Ziegler,* 136 B.R. 497, 502 (Bankr.N.D.Ill.1992); *In re Gyulafia,* 65 B.R. 913, 915 (Bankr.D.Kan.1986); *McCray v. McCray (In re McCray),* 62 B.R. 11, 12 (Bankr.D.Colo.1986); *In re Root,* 61 B.R. 984, 985 (Bankr.D.Colo.1986); *Johnson v. Johnson (In re Johnson),* 51 B.R. 439, 442 (Bankr. E.D.Pa.1985); *In re Gonzalez,* 42 B.R. 401 (Bankr.N.D.Ga.1984); *In re Johnson,* 36 B.R. 958, 959 (Bankr.D.Utah 1983); *Bernstein v. Nagel (In re Bernstein),* 20 B.R. 595, 598 (Bankr.M.D.Fla.1982); *In re Adams,* 12 B.R. 540, 542 (Bankr.D.Utah 1981).

In a third line of cases, which factually involve only property acquired by a debtor pre-petition, courts (while not discussing the effect of confirmation on property acquired post-confirmation) have held that property owned by a debtor pre-petition, vests, upon confirmation, in the debtor free and clear of the claims of pre-petition creditors, and, following confirmation, pre-petition creditors have no rights to or expectancy of recovery from that property. *Davis v. Victor Warren Properties, Inc. (In re Davis),* 216 B.R. 898, 902 (Bankr.N.D.Ga.1997); *In re Habtemichael,* 190 B.R. 871, 874 (Bankr.W.D.Mo.1996); *In re Reed,* 165 B.R. 959, (Bankr.N.D.Ga. 1993); *In re Brilz,* 96 B.R. 308, 309 (Bankr. D.Mont.1989); *In re Walker,* 84 B.R. 888 (Bankr.D.C.1988); *Ghen v. Branca (In re Ghen),* 45 B.R. 780, 782 (Bankr.E.D.Pa.1985); *In re Walker,* 20 B.R. 372, 373 n. 1 (Bankr. E.D.Va.1982); *In re Stark,* 8 B.R. 233 (Bankr. N.D.Ohio 1981).

In a fourth line of cases, which factually involve only property acquired by a debtor pre-petition, courts (while discussing the effect of confirmation both on property acquired pre-petition and property acquired post-confirmation), have held that property owned by a debtor pre-petition, vests, upon confirmation, in the debtor free and clear of the claims of pre-petition creditors, and, following confirmation, pre-petition creditors have no rights to or expectancy of recovery from that property, but that pre-petition creditors have rights to or expectancy of recovery from property acquired post-confirmation by the debtor, which, according to those courts, does not vest in the debtor but remains "property of the estate." *Annese v. Kolenda (In re Kolenda),* 212 B.R. 851, 855 (W.D.Mich. 1997); *City of Chicago v. Fisher (In re Fisher),* 203 B.R. 958, 962 (N.D.Ill.1997); *In re Rangel,* 233 B.R. 191, 1999 WL 301208 *6

(Bankr.D.Mass., April 23, 1999); *In re Guentert,* 206 B.R. 958, 962 (Bankr.W.D.Mo.1997).

In a fifth line of cases, which factually involve only property acquired by a debtor post-confirmation, courts (while only discussing the effect of confirmation on property acquired by the debtor post-confirmation) have held that property acquired post-confirmation by the debtor does not vest in the debtor but remains "property of the estate" and that pre-petition creditors have rights to or expectancy of recovery from the debtor's post-confirmation property. *Baker v. Rank (In re Baker),* 154 F.3d 534, 538 (5th Cir.1998); *In re Suarez,* 149 B.R. 193, 195–196 (Bankr.D.N.M. 1993); *In re Bartlett,* 149 B.R. 446, 449 (Bankr.W.D.Tex.1992); *In re Tworek,* 107 B.R. 666, 667 (Bankr.D.Neb.1989); *Cornelius v. Cornell (In re Cornell),* 95 B.R. 219, 222 (Bankr.W.D.Okla.1989); *Doane v. Appalachian Power Co. (In re Doane),* 19 B.R. 1007, 1009 (W.D.Va.1982); *Valley Fed. Sav. Bank v. Anderson,* 612 N.E.2d 1099, 1102 (Ind.Ct.App. 1993).

Application of the cases in this fifth group is limited. All involved bankruptcy cases filed prior to October 22, 1994, the effective date of the 1994 amendment adding section 348(f)(1)(A). And application of that provision is restricted as, "Except as provided in paragraph (2), the amendments made by this Act shall not apply with respect to cases commenced under title 11 of the United States Code before the date of the enactment of this Act." Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 702(b), 108 Stat. 4106, 4150 (1994). Three of the cases (*In re Tworek, In re Bartlett,* and *In re Baker*) expressly involved the issue of whether post-confirmation property, upon conversion to Chapter 7, became property of the estate in the converted case. The rulings there have, consequently, been superceded, for precedential purposes, by section 348(f). Likewise, it would seem that the ruling in *Valley Fed. Sav. Bank v. Anderson* has lost any precedential value on the point since the court in that case relied heavily on the Court of Appeals for the Seventh Circuit decision in *In re Lybrook,* 951 F.2d 136 (7th Cir.1991), which was specifically overruled by Congress when it enacted section 348(f). The legislative history reads in part, "This amendment overrules the holding in cases such as *Matter of Lybrook,* 951 F.2d 136 (7th Cir. 1991) ...." H.R.Rep. No. 835, 13rd Cong., 2nd Sess., Sec. 311 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 1994 WL 562232.

A sixth line of cases is made up of a relatively low number of miscellaneous cases. One of those cases, *In re Fisher,* 198 B.R. 721 (Bankr.N.D.Ill.1996), *rev'd. City of Chicago v. Fisher (In re Fisher),* 203 B.R. 958, 962 (N.D.Ill.1997), factually involved only property acquired by a debtor pre-confirmation. The court held that both property acquired by

of all claims of whatever pre-petition creditors are bound by the confirmation order. This of course includes Compass Bank. In contrast, pursuant to section 1327(a), Compass and similarly situated creditors must accept the payments provided for them under the confirmed Chapter 13 plan.

the debtor pre-confirmation and property acquired by the debtor post-confirmation remained "property of the estate." *Id.* at 733. Another case, *In re Clark,* 71 B.R. 747 (Bankr. E.D.Pa.1987), also involved property acquired by a debtor pre-confirmation. The court held that property acquired by the debtor pre-confirmation remained "property of the estate" and was subject to the claims of pre-petition creditors, but did not discuss the effect of confirmation on property acquired by the debtor post-confirmation. *Id.* at 750.

In a seventh line of cases, courts have discussed whether or not "windfalls" realized by debtors post-confirmation warrant modification of confirmed plans under section 1329 to increase payments to unsecured creditors. In the course of those discussions, the courts have found that the sources or causes of the "windfall" were "property of the estate" under section 1306. See *In re Easley,* 205 B.R. 334, 335 (Bankr.M.D.Fla.1996); *In re Casper,* 153 B.R. 544, 549 (Bankr.N.D.Ill.1993), *rev'd sub. nom., Casper v. McCullough,* 154 B.R. 243 (N.D.Ill.1993); *In re Cook,* 148 B.R. 273, 277 (Bankr.W.D.Mich.1992); *In re Euerle,* 70 B.R. 72, 73 (Bankr.D.N.H.1987); *In re Koonce,* 54 B.R. 643 (Bankr.D.S.C.1985).

These cases are inapposite to the result reached here. As indicated in the discussion contained in the body of this opinion, the question, in the final analysis, is not what technical phrase should be used to describe a particular piece of property, that is, "property of the estate" or "property of the debtor", but, rather, what rights are accorded by Chapter 13 to pre-petition creditors in that property following confirmation.

There are other differences. The cases cited which make up the seventh line do not discuss the vesting and binding provisions of section 1327. All except *In re Easley* involved bankruptcy cases filed prior to the effective date of the 1994 amendment adding section 348(f)(1)(A). And the court in *In re Easley* did not discuss how its decision was effected by, or might effect, the operation of section 348(f)(1)(A).

Furthermore, the primary focus of the windfall—modification cases is whether or not a proposed modification passes muster

## B. Chapter 13 Trustee

Chapter 13 neither contemplates nor authorizes the collection, liquidation and distribution of either "property of the estate" or property of the debtor. Consequently, there are no statutory provisions allowing the Chapter 13 Trustee to administer the proceeds of the debtor's settled lawsuit.[16]

under section 1329 ("substantial and unanticipated change in circumstances", and so forth), and not whether or not a Chapter 13 trustee can reach and liquidate property, which otherwise may result in a windfall to the debtor, for the benefit of pre-petition creditors, or whether or not the same property can be reached by post-petition creditors. None of the cited cases suggests that labeling certain property as section 1306(a) "property of the estate" ipso facto mandates or justifies modification under section 1329. In fact, the question of whether or not a certain property interest constitutes "property of the estate" was not pivotal to the decisions made in any of the cases. Consequently, any statement appearing in any of the cited cases to the effect that property acquired by a debtor post-confirmation is "property of the estate" can be fairly classified as dicta. This conclusion is supported by the fact that the vast majority of cases addressing the windfall—modification issue have done so without discussing section 1306 or invoking the "property of the estate" label. See *In re Witkowski,* 16 F.3d 739 (7th Cir.1994); *Arnold v. Weast (In re Arnold),* 869 F.2d 240 (4th Cir.1989); *In re Brown,* 219 B.R. 191 (6th Cir. BAP 1998); *In re Forbes,* 215 B.R. 183 (8th Cir. BAP 1997); *In re Collier,* 198 B.R. 816 (Bankr.N.D.Ala. 1996); *In re Edwards,* 190 B.R. 91 (Bankr. M.D.Tenn.1995); *In re Heath,* 182 B.R. 557 (9th Cir. BAP 1995); *In re Moore,* 181 B.R. 522 (Bankr.D.Idaho 1995); *In re Solis,* 172 B.R. 530 (Bankr.S.D.N.Y.1994); *In re Boothe,* 167 B.R. 943 (Bankr.D.Colo.1994); *In re Wilson,* 157 B.R. 389 (Bankr.S.D.Ohio 1993); *In re Phelps,* 149 B.R. 534 (Bankr.N.D.Ill.1993); *In re Powers,* 140 B.R. 476 (Bankr.N.D.Ill. 1992); *In re Bostwick,* 127 B.R. 419 (Bankr. N.D.Ill.1991); *In re Woodhouse,* 119 B.R. 819 (Bankr.M.D.Ala.1990); *In re Mitchell,* 116 B.R. 63 (Bankr.W.D.Va.1990); *In re Perkins,* 111 B.R. 671 (Bankr.M.D.Tenn.1990); *In re Fitak,* 92 B.R. 243 (Bankr.S.D.Ohio 1988), *aff'd,* 121 B.R. 224 (S.D.Ohio 1990); *In re Moss,* 91 B.R. 563 (Bankr.C.D.Cal.1988); *In re Cherry,* 85 B.R. 11 (Bankr.W.D.N.Y.1988).

**16.** See note 12 above.

### 1. Trustees' Powers

■ Under section 704(1) of the Bankruptcy Code, a Chapter 7 trustee may "collect and reduce to money the property of the estate for which such trustee serves...." 11 U.S.C. § 704(1). These powers are absent from Chapter 13. A Chapter 13 Trustee is neither empowered nor authorized to collect or liquidate property of the estate or property of the debtor. Similarly, Chapter 13 does not contain any provision, like that in section 726(a) for Chapter 7 trustees, which either permits or directs the distribution of "property of the estate" or which specifies how "property of the estate shall be distributed ...." 11 U.S.C. § 726(a). In fact, the only provision in Chapter 13 which authorizes or permits a Chapter 13 Trustee to handle property of any nature is found in section 1302(b)(3), which requires the trustee to distribute the plan payments received from a debtor. Consequently, other than relaying the funds directly entrusted to the trustee by the debtor pursuant to a confirmed plan, a Chapter 13 Trustee, unlike a Chapter 7 trustee, has no statutory obligation, right, duty or power to sell, use, lease, collect, liquidate or distribute any property, whether that property is denominated "property of the estate" or "property of the debtor."

The reasons for these limitations are obvious. Chapter 13 is a voluntary process. No one can force a debtor into Chapter 13. No involuntary petitions may be filed and debtors cannot be forced to convert cases filed under another chapter of the Bankruptcy Code to Chapter 13. See 11 U.S.C. § 303(a) and § 706(c). And once a debtor files a Chapter 13 case, no one may force a liquidation of that debtor's assets, that is except by requesting and obtaining conversion of the case to Chapter 7. See 11 U.S.C. § 1307(c).

There are however, no such limitations on the Chapter 13 debtor. Like a Chapter 7 trustee, a Chapter 13 debtor has the authority to and choice to administer the "property of the estate." That debtor may avoid the liquidation of assets by voluntarily filing a Chapter 13 petition or may accept liquidation by voluntarily converting a Chapter 13 case into a case under Chapter 7. See 11 U.S.C. § 706(a). The Chapter 13 debtor, rather than the Trustee, is specifically endowed, pursuant to section 1303, with the authority, "*exclusive of the trustee,*" to use, sell or lease property of the estate. 11 U.S.C. § 1303 (emphasis added). Section 1306(b) mandates that "the debtor *shall* remain in possession of *all property of the estate.*" 11 U.S.C. § 1306(b)(emphasis added). "Property of the estate," which, pursuant to section 1306(a), includes all property specified in section 541 plus all property and earnings acquired by the debtor after the bankruptcy filing, "*vests ... in the debtor*" (section 1327(b)) "*free and clear* of any claim or interest of any creditor provided for in the plan" (section 1327(c)) (emphasis added) upon confirmation. And a debtor who exercises the absolute right to convert to Chapter 7, continues following conversion, (pursuant to section 348(f)), to be in complete charge and control of property acquired after filing the original Chapter 13 petition.

■ Chapter 7 is the bankruptcy vehicle for collecting, liquidating and distributing a debtor's assets. At filing, the Chapter 7 trustee is placed in charge of the debtor's interests in property and is provided the tools for collecting, liquidating, and distributing those interests. Chapter 7 does not contemplate that a debtor will retain any property interests, except those exempt and (with limited exceptions) those acquired after the filing of the bankruptcy petition. On the other hand, Chapter 13 is the bankruptcy vehicle for facilitating the repayment of debts by an individual with regular income. And in contrast to Chapter 7, a Chapter 13 Trustee has no right to possess, collect, use, lease, or liquidate any of the debtor's property interests, except to receive and distribute the debtor's plan payments, that is, because the Chapter 13 Trustee is not

provided with any statutory tools for collecting, liquidating, and distributing those property interests. Simply put, Chapter 7 contemplates that the debtor will sacrifice property; Chapter 13 contemplates that the debtor will retain it.

### 2. Congressional Intent

If post-confirmation preservation of the debtors' property interests for the benefit of pre-petition creditors was the intent of Congress, Congress could have easily provided so. For example:

Section 1327(a) might provide that "the provisions of a confirmed plan bind the debtor and each creditor unless and until the debtor fails to make the payments required under the plan, at which time the trustee shall collect and reduce to money all property of the estate."

Section 1327(b) might provide that "confirmation of a plan vests all property of the estate in the debtor, provided that the debtor shall not dispose of said property until after discharge, and that, upon the failure of the debtor to make the payments required under the plan, the debtor will turn over said property to the trustee."

Section 1327(c) would be unnecessary or might provide that "upon consummation of the plan, the property vesting in the debtor is free and clear of any claim or interest of any creditor provided for by the plan unless the debtor fails to make the payments required under the plan."

Section 348(f)(1)(A) would provide a result opposite from its current one, and would read that "property of the estate in the converted case shall consist of property of the estate as of the date of conversion."

Section 1302(b)(1) might provide that the trustee shall "perform the duties specified in sections 704(2), 704(3), 704(4), 704(5), 704(6), 704(7), and 704(9) of this title, and, if the court so orders, upon failure of the debtor to make the payments required under the plan, the duties specified in 704(1)."

Section 1306(b) might provide that "the debtor shall remain in possession of all property of the estate, but shall not dispose of said property until after discharge, and upon failure to make the payments required under the plan, turn over said property to the trustee."

Section 362(a)(5), which provides that the automatic stay forbids "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title," would be redundant, since section 362(a)(3) forbids "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and section 362(a)(4) forbids "any act to create, perfect, or enforce any lien against property of the estate."

And section 362(b)(2)(B), which provides that the automatic stay does not forbid "the collection of alimony, maintenance, or support from property that is not property of the estate," might provide that the automatic stay does not "operate as a stay, in cases filed under Chapters 7 and 11, of the collection of alimony, maintenance, or support from property that is not property of the estate or, in cases filed under Chapters 12 and 13, of the collection of alimony, maintenance, or support from property of the estate acquired by the debtor following the date of the filing of the petition."

### 3. The Debtor's Everyday Life

If the roles of Chapter 13 Trustees and bankruptcy courts include the post-confirmation preservation of debtors' property interests for the benefit of pre-petition creditors, both the Trustees and the courts would be embroiled in every dispute, no matter how trivial, that might effect those debtors' income or expenditures or which could "conceivably have an effect on the estate[s] being administered." *Miller v.*

*Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir.1990) (parenthetical added). For instance, what if there were a dispute between a debtor and a boss over a raise purportedly promised; a dispute with a mechanic over repairs made to a debtor's automobile; a dispute over a defective appliance purchased at a department store; a dispute with a former spouse over unpaid child support payments; or a dispute with a cable television company over faulty reception? Would not all of these disputes then fall within a bankruptcy court's "related to" jurisdiction, as each involves either money or property owned by a Chapter 13 debtor and because "there is no minimum amount in controversy required to litigate under the Bankruptcy Code . . .?" *Black v. United States Postal Service (In re Heath),* 115 F.3d 521, 522 (7th Cir.1997).

In *Harris v. Midland Risk Services, Inc. (In re Harris),* Ch. 7 Case No. 94–07498–BGC–13, Adv. No. 95–00138 (Bankr.N.D.Ala. August 29, 1995), this Court considered a situation that is exemplary of the jurisdiction morass that would result if every dispute regarding a Chapter 13 debtor's property, whether or not denominated "property of the estate," could be litigated in the bankruptcy court. The debtor in *Harris* was involved in a post-confirmation automobile accident that resulted in damage to the automobile owned by the debtor when he filed Chapter 13. The debtor's automobile insurance carrier refused to pay as much of the debtor's property damage claim as the debtor thought was warranted. The debtor filed an adversary proceeding against the carrier in the bankruptcy court, contending that since the automobile was "property of the estate," the bankruptcy court had "related to" jurisdiction over the dispute. This Court held that resolution of the dispute would have no effect on the administration of the debtor's Chapter 13 proceeding and dismissed the adversary proceeding for lack of jurisdiction. This Court stated:

This Court attempted to accommodate the parties with a ruling on the merits, but after significant time and research believes it is unable to do so. The law in this circuit is clear. This Court lacks jurisdiction to decide the substantive issues between these parties. "[I]f the resolution of litigation cannot affect the administration of the estate, the bankruptcy court does not have jurisdiction to decide it." *In re Gallucci,* 931 F.2d 738, 742 (11th Cir. 1991). This case involves a state law contract between the Debtor and his insurance carrier. The contract or tort claim the Debtor alleges he has against the Defendant and others arose after he filed his bankruptcy petition. When this Court entered its confirmation order on February 1, 1995 all property of this estate vested in the Debtor pursuant to 11 U.S.C. § 1327(b). Whether the Debtor is successful or not in having certain repairs made, will not effect this estate beyond the effect that actions of any debtors affect their estates. This Court does not have jurisdiction to decide every dispute the Debtor has with another party simply because the Debtor has a pending bankruptcy case.

*Harris v. Midland Risk Services, Inc. (In re Harris),* Ch. 7 Case No. 94–07498–BGC–13, Adv. No. 95–00138, slip op. at 2 (Bankr.N.D. Ala. August 29, 1995).

The same jurisdictional issue was addressed by the Court of Appeals for the Seventh Circuit in *Black v. United States Postal Service (In re Heath),* 115 F.3d 521 (7th Cir.1997). In *In re Heath,* after the issuance of a deduction order to the debtor's employer by the Chapter 13 Trustee, the debtor's employer made a one-time $50.00 surcharge to the debtor's wages to cover the cost of complying with the monthly deduction. The Chapter 13 Trustee filed an adversary proceeding in the bankruptcy court seeking to recover the charge. The bankruptcy court held for the trustee; the district court reversed. The court of appeals, in considering the

issue of the bankruptcy court's jurisdiction, first noted the triviality of the trustee's suit and how it exemplified the very problem created by a reading of Chapter 13 which places all of the debtor's property under the control of the Chapter 13 Trustee. Writing for the court, Chief Judge Richard A. Posner, stated:

The trustee's motivation in pursuing this minuscule claim through three courts eludes us. But as there is no minimum amount in controversy required to litigate under the Bankruptcy Code, we must treat this $50 case—which in fact involves important questions of law—with all the gravity of a $50 million case.

*Id.* at 522. The court next considered an even more perplexing example posed by the defendant in the case. Judge Posner wrote:

The Postal Service, in defense of the court's ruling, asks us to imagine the next case—in which the trustee brings suit on behalf of Heath against a grocer who overcharges her for an apple that she had paid for out of her income. Silly as that case seems (and at bottom is), it cannot simply be laughed out of court. The trustee in bankruptcy has, with immaterial exceptions listed in *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir.1990), the exclusive right to sue on behalf of the debtor's estate. E.g., *id.* at 1257; *Vega v. Gasper*, 36 F.3d 417, 422 (5th Cir.1994); *In re Eisen*, 31 F.3d 1447, 1451 n. 2 (9th Cir.1994); *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir.1988); see 11 U.S.C. § 323. As the property of the estate includes income generated by property of the estate (rental income for example), 11 U.S.C. § 541(a)(6), as well as (with immaterial exceptions) the estate's legal and equitable interests, § 541(a), a suit to collect such income would be within the trustee's purview.

*Id.* at 523.

The circuit court affirmed the district court's reversal of the bankruptcy court. The circuit court agreed that the bankruptcy court lacked even "related to" jurisdiction over the trustee's suit because the suit did not involve property used by the debtor to fund the Chapter 13 plan. Judge Posner explained:

If in a Chapter 11 proceeding in which a trustee is appointed the debtor has rental income before the plan is confirmed and the trustee terminated, the income is received by the trustee; and if there is a dispute over how much is owed, it is the trustee who will litigate the dispute with the tenant, by means of an adversary action filed in the bankruptcy court. What makes the parallel authority of a Chapter 13 Trustee seem odd, even weird, is that the Chapter 13 debtor is not a business firm and the bankruptcy proceeding is wound up not when the plan is confirmed, as in a Chapter 11 reorganization, 11 U.S.C. § 1141(b), but when it is successfully completed, § 1328(a); normally three years after confirmation but here five. *It is possible for the entire income of the debtor during that period to be property of the debtor's estate and so within the control of the trustee, in which event any dispute over that income, including the dispute with the corner grocer, would be for the trustee, not the debtor, to litigate, should the dispute result in a suit. The legal situation of the debtor in such a case would be equivalent to that of a child, a mental incompetent, or a married woman in the era of coverture.*

This is not quite as ludicrous a situation in which to place a Chapter 13 debtor as it may sound. One can imagine a person so incompetent (in the practical, not legal, sense) in the management of his or her money that the only way in which the creditors would be paid would be if someone controlled all the debtor's expenditures. The debtor might agree, and so propose a plan that included this feature. The bankruptcy judge would have to decide whether to confirm a plan that would threaten to impose

upon the bankruptcy court the burden of adjudicating a multitude of petty disputes such as that pressed in this case. It's a safe bet that rarely if ever would the assumption of such a potential burden be justified.

In any event that is not our case. The plan as confirmed by the bankruptcy court does not place all of Heath's income until the completion of the plan in the debtor's estate and so in the trustee's control, but only so much of the income (or her other property) as necessary to the fulfillment of the plan. We must therefore consider whether the $50 that the Postal Service deducted from her postal salary as a garnishment fee is necessary to the fulfillment of the plan—necessary, that is, to the payment in full of the creditors' allowed claims. Conceivably it is—but no effort to establish that Heath's financial situation is so fragile that the loss of $50 will jeopardize fulfillment of the plan has been made. It is true that the Bankruptcy Code says that all the earnings of a Chapter 13 debtor are property of the estate. 11 U.S.C. § 1306(a)(2). But it also says that "confirmation of a plan vests all of the property of the estate in the debtor" unless the plan provides otherwise, § 1327(b) (emphasis added), which we think scotches any inference that Congress intended to render all Chapter 13 debtors legally incompetent to manage any of their property. We read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan. It would presumably be an abuse of discretion for the bankruptcy judge to confirm a plan that retained more of the property in the hands of the trustee than was reasonably necessary to fulfill the plan, though we need not decide that in this case.

If the $50 taken from Heath's wages to pay the Postal Service's garnishment fee were property of the estate, this adversary action would be within the core jurisdiction of the bankruptcy court. 28 U.S.C. § 157(b)(2)(E). But as it is not property of the estate, and no other basis of core jurisdiction is present, the action can be maintained in the bankruptcy court only if it is "related" to the bankruptcy proceeding, 28 U.S.C. § 1334(b), which means (so far as bears on the present case) only if it is likely to affect the debtor's estate—of which there is no evidence.

*Black v. United States Postal Service (In re Heath),* 115 F.3d at 523–524 (citations omitted) (emphasis added).

The problems considered above are real, practical problems. According to tabulations provided by the Clerk of Court for the Bankruptcy Court for the Northern District of Alabama, there were, as of the Summer of 1999, a total of 13,759 Chapter 13 cases pending in the Southern Division of this District. If only one of the above-described disputes arose in each of those cases, what number of bankruptcy judges and support staff, with the concomitant expenses, would be required to hear and determine all post-confirmation disputes that might effect the property (whether acquired pre-petition or post-petition) of those 13,759 debtors? Would a construction of the Bankruptcy Code that would require a bankruptcy court to entertain such litigation, post-confirmation, regarding debtors' property interests, under the guise of preserving or protecting "properties of estates" for the benefit of debtors and pre-petition creditors, transform Chapter 13 into a litigation morass that would be detrimental to everyone involved in the bankruptcy process? This Court believes so.

#### 4. Post-petition Creditors

Construction of Chapter 13 to require post-confirmation preservation of debtors' property interests for the benefit of pre-

petition creditors would be unfair to post-petition creditors. Application of the label "property of the estate" to a Chapter 13 debtor's property interests, whether acquired by the debtor pre-confirmation or post-confirmation, for the purpose of preserving those property interests for the benefit of pre-petition creditors, would permit extension of the automatic stay to prevent the efforts of post-petition creditors to collect debts incurred by the Chapter 13 debtor following confirmation. Chapter 13 debtors would be permitted to incur debts following confirmation with impunity from the collection efforts of post-petition creditors. What would be the result if post-petition creditors attempted to collect those debts pursuant to section 362(a)(3), a section that stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate?" 11 U.S.C. § 362(a)(3).

Principles of equitable estoppel are also implicated when a debtor, after incurring a post-petition debt under the premise that the post-petition creditor will be paid or at least have normal rights of collection, seeks to raise the automatic stay as either a shield to prevent the creditor from exercising those rights or a sword to punish the creditor for attempting to exercise those rights. Certainly, constitutional due process concerns are implicated when the stay is applied to hamper post-petition creditors who were not provided the opportunity to participate in the confirmation process.

Construction of the Bankruptcy Code to hinder the collection efforts of post-petition creditors would also have the effect of preferring the rights of pre-petition creditors over the rights of post-petition creditors. What policy is served by permitting the payment of pre-petition creditors while delaying or frustrating the payment of post-petition creditors? Do post-petition creditors not have a right to be paid which is at least equal in stature to the same right of pre-petition creditors? Are debtors' post-petition creditors required to wait three to five years while debtors remain in Chapter 13 cases? [17]

There is no evidence from the language of the statutes that Congress intended to insulate Chapter 13 debtors from the consequences of their own post-petition actions and transactions or that Congress intended to favor pre-petition creditors over post-petition creditors. Congress, in fact, apparently intended for Chapter 13 debtors to pay post-petition creditors from any assets available to them and for the Chapter 13 process to have no effect on post-petition creditors. On one hand, to be paid in a case, pre-petition creditors are required to file claims and to participate in the bankruptcy process. On the other hand, post-petition creditors are not required either to file claims or to involve themselves in the Chapter 13 process. See 11 U.S.C. § 1305(a). And unlike pre-petition creditors, post-petition creditors are not bound by confirmation. See 11 U.S.C. § 1327(a).[18]

■■■ The practical effect is obvious. While confirmation vests all property of

---

**17.** If post-petition creditors are restricted from exercising collection rights, what are the parameters for granting them relief from the stay? Are post-petition creditors entitled ipso facto to relief from the stay or to meet a reduced burden in order to obtain relief? See *In re Clark*, 71 B.R. 747, 750 (Bankr.E.D.Pa. 1987)("We believe that a party standing in the shoes of the Movant should have a relatively slight burden to overcome to obtain relief from the automatic stay prospectively. Otherwise, as we indicated above, a post-petition creditor, even one holding, as here, a valid judgment against a debtor, would be unfairly

frozen in place until the debtor, in leisurely fashion, completes his Plan payments and is discharged.")

**18.** The term "creditor" is defined in section 101(10) as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Consequently, use of the term "creditor" in any Code section is intended to refer exclusively to pre-petition creditors and not post-petition creditors.

the estate in the debtor upon confirmation free and clear of any claim or interest of pre-petition creditors provided for by the plan, it does not have that effect on post-petition creditors. Section 362(c) provides that the automatic stay of an act against property of the estate continues only until such property is no longer property of the estate.[19] Once property of the estate is transferred back to the debtor pursuant to 1327(b), only pre-petition creditors, who are bound by the plan pursuant to 1327(a) and have been specifically divested of any interest in that property pursuant to section 1327(c), are precluded from pursuing that property. On the other hand, post-petition creditors who were not required to participate in the plan or permitted to participate in the confirmation process; who will receive nothing under the plan; who are not bound by the plan; and whose rights in the property vesting in the debtor were not extinguished pursuant to 1327(c); are not specifically forbidden by any section of the Code from pursuing that property.[20]

## C. Effect of Failure to Schedule the Lawsuit

 A related issue remains. The fact that Mr. Frausto did not disclose the existence of his pre-petition cause of action in his bankruptcy petition does not change the conclusion that the proceeds of that cause of action are not property of the estate and are unavailable to pre-petition creditors. No provision of the Bankruptcy Code provides for the negation of the effect of section 1327 as to property owned by a debtor but not disclosed. Under appropriate circumstances, confirmation of a debtor's plan may be revoked pursuant to section 1330(a) of the Bankruptcy Code, which permits revocation of an order of confirmation if the order was "procured by fraud." 11 U.S.C. § 1330(a), But of

course, pursuant to section 1330(a) confirmation may only be revoked under that section on request of a party in interest made within 180 days after entry of the order of confirmation. Since more than 180 days have passed since the confirmation order in Mr. Frausto's case was entered, and since no party in interest has requested revocation of the confirmation order, the order must stand. The effect of that order on the proceeds of Mr. Frausto's lawsuit, and the interest of creditors, if any, in those proceeds, is governed by section 1327, the same as if the lawsuit had been disclosed by Mr. Frausto in his bankruptcy petition.

## V. Conclusion

Based on the above, the Court finds the *Trustee's Motion to Quash Garnishment* is due to be denied; the *Motion to Enforce Garnishment* is due to be granted; and the *Alternative Motion to Reconsider Ruling on Administrative Claim for Marshaling, or, to Convert Case to Chapter 7* is due to be denied. A separate order will be entered contemporaneously with this Memorandum Opinion.

---

19. But see *Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle)*, 12 F.3d 1008 (11th Cir. 1994).

20. But of course, Chapter 13 debtors whose post-confirmation debts become unmanageable do have the remedies afforded through Chapter 7.