**In the Matter of June M. HEATH, Debtor.**

**Joseph M. BLACK, Trustee, Plaintiff–Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Defendant–Appellee.**

No. 96–3066.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1997.

Decided June 10, 1997.

Joseph M. Black (argued), John F. Rothring, Rothring, Lambring & Black, Seymour, IN, for Trustee–Appellant.

Jeffrey L. Hunter (argued), Judith A. Stewart, Office of the United States Attorney, Indianapolis, IN, for Appellee.

Before POSNER, Chief Judge, and FLAUM and ROVNER, Circuit Judges.

POSNER, Chief Judge.

A trustee in bankruptcy filed an adversary action in the bankruptcy court seeking to recover $50 for his debtor. The court rendered judgment for the trustee, but the district court reversed, 198 B.R. 298 (S.D.Ind. 1996), and the trustee has now appealed to us. The trustee's motivation in pursuing this minuscule claim through three courts eludes us. But as there is no minimum amount in controversy required to litigate under the Bankruptcy Code, we must treat this $50 case—which in fact involves important questions of law—with all the gravity of a $50 million case.

Heath, a postal worker, filed for bankruptcy under Chapter 13, which is a kind of "personal reorganization" counterpart to the better-known Chapter 11 (corporate reorganization). *In re Hoskins,* 102 F.3d 311, 313 (7th Cir.1996); *In re Penrod,* 50 F.3d 459, 464 (7th Cir.1995); *In re Love,* 957 F.2d 1350, 1356 (7th Cir.1992). The Chapter 13 debtor proposes a plan for the payment of creditors over time, in lieu of liquidation of the debtor's estate as in Chapter 7. Heath proposed and the bankruptcy court confirmed a plan under which she would pay all the allowed claims of her creditors over a period of five years at the rate of $32 a week, at the end of which time, if the plan was completed successfully, she would be discharged from her debts and the bankruptcy proceeding would be dismissed. Neither the plan nor the order confirming it actually says that she will be discharged and the proceeding dismissed when and if the plan is completed successfully, but that is the law. 11 U.S.C. § 1328(a); *In re Aberegg,* 961 F.2d 1307, 1308 (7th Cir.1992); *In re Arnold,* 869 F.2d 240, 242 (4th Cir.1989). The $32 weekly payment is to be made to a trustee in bankruptcy, appointed by the court, for distribution to the creditors in accordance with the terms of the plan. The order of the bankruptcy judge confirming the plan states that "the debtor's income and other assets including accounts receivables [sic] remain estate

property to the extent necessary to fulfill the plan."

As authorized by Chapter 13 and provided for in the plan, the court issued a "take out order" directing Heath's then employer to garnish $32 a week of her salary. 11 U.S.C. § 1325(c). A year later, when she had left that employer and gone to work for the Postal Service, a new take-out order was issued directing the Postal Service to withhold $75.77 from her biweekly pay. This is considerably more than $32 a week; we cannot find in the record any explanation for the increase—perhaps it was to make up for missed payments between jobs. However that may be, the Service charged a $50 fee for the garnishment. It claims that the fee is authorized by 5 U.S.C. § 5520a(j)(2), as it existed before a recent amendment; the trustee disagrees; we won't have to decide.

This was a one-time fee that was deducted from Heath's salary rather than from the amount of that salary that the Postal Service garnishes and pays over to the trustee. So it did not interfere, at least directly, with the payments to the creditors under the plan. Nevertheless, the trustee is suing for the return of the $50. If he wins the suit, he will turn the money over to Heath, not to the creditors, who as we have just explained are not entitled to it—they are continuing to receive the full payments to which the plan entitles them; the $50 was not deducted from those payments. The trustee will not charge Heath, or the creditors, any fee for his services in obtaining the $50; for, as the plan fixes his fee at 10 percent of the amount paid to the creditors, plus a $1,000 attorney's fee, he has no right to a fee for his services in this adversary action.

■■■ It may seem very odd for the trustee to be suing on behalf not of the creditors but of the debtor. It seemed so to the district court, which concluded that he had no standing. The Postal Service, in defense of the court's ruling, asks us to imagine the next case—in which the trustee brings suit on behalf of Heath against a grocer who overcharges her for an apple that she had paid for out of her income. Silly as that case seems (and at bottom is), it cannot simply be laughed out of court. The trustee in bank-

ruptcy has, with immaterial exceptions listed in *In re Perkins*, 902 F.2d. 1254, 1258 (7th Cir.1990), the exclusive right to sue on behalf of the debtor's estate. E.g., *id.* at 1257; *Vega v. Gasper*, 36 F.3d 417, 422 (5th Cir. 1994); *In re Eisen*, 31 F.3d 1447, 1451 n. 2 (9th Cir.1994); *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir.1988); see 11 U.S.C. § 323. As the property of the estate includes income generated by property of the estate (rental income for example), 11 U.S.C. § 541(a)(6), as well as (with immaterial exceptions) the estate's legal and equitable interests, § 541(a), a suit to collect such income would be within the trustee's purview.

If in a Chapter 11 proceeding in which a trustee is appointed the debtor has rental income before the plan is confirmed and the trustee terminated, the income is received by the trustee; and if there is a dispute over how much is owed, it is the trustee who will litigate the dispute with the tenant, by means of an adversary action filed in the bankruptcy court. E.g., *In re Schnabel*, 612 F.2d 315, 316 (7th Cir.1980); 1 Daniel R. Cowans, *Bankruptcy Law and Practice* § 2.7, p. 155 (6th ed.1994); cf. 28 U.S.C. § 959. What makes the parallel authority of a Chapter 13 trustee seem odd, even weird, is that the Chapter 13 debtor is not a business firm and the bankruptcy proceeding is wound up not when the plan is confirmed, as in a Chapter 11 reorganization, 11 U.S.C. § 1141(b), but when it is successfully completed, § 1328(a); *In re Carr*, 159 B.R. 538, 543 (D.Neb.1993); *In re Townsend*, 187 B.R. 230, 235 (Bankr. W.D.Tenn.1995); *In re Rivera*, 177 B.R. 332 (Bankr.C.D.Cal.1995), normally three years after confirmation but here five. It is possible for the entire income of the debtor during that period to be property of the debtor's estate and so within the control of the trustee, in which event any dispute over that income, including the dispute with the corner grocer, would be for the trustee, not the debtor, to litigate, should the dispute result in a suit. The legal situation of the debtor in such a case would be equivalent to that of a child, a mental incompetent, or a married woman in the era of coverture.

This is not *quite* as ludicrous a situation in which to place a Chapter 13 debtor as it may sound. One can imagine a person so incompetent (in the practical, not legal, sense) in the management of his or her money that the only way in which the creditors would be paid would be if someone controlled all the debtor's expenditures. The debtor might agree, and so propose a plan that included this feature. The bankruptcy judge would have to decide whether to confirm a plan that would threaten to impose upon the bankruptcy court the burden of adjudicating a multitude of petty disputes such as that pressed in this case. It's a safe bet that rarely if ever would the assumption of such a potential burden be justified.

In any event that is not our case. The plan as confirmed by the bankruptcy court does not place all of Heath's income until the completion of the plan in the debtor's estate and so in the trustee's control, but only so much of the income (or her other property) as necessary to the fulfillment of the plan. We must therefore consider whether the $50 that the Postal Service deducted from her postal salary as a garnishment fee is necessary to the fulfillment of the plan—necessary, that is, to the payment in full of the creditors' allowed claims. Conceivably it is—but no effort to establish that Heath's financial situation is so fragile that the loss of $50 will jeopardize fulfillment of the plan has been made. It is true that the Bankruptcy Code says that all the earnings of a Chapter 13 debtor are property of the estate. 11 U.S.C. § 1306(a)(2). But it also says that "confirmation of a plan vests *all* of the property of the estate *in the debtor*" unless the plan provides otherwise, § 1327(b) (emphasis added), which we think scotches any inference that Congress intended to render *all* Chapter 13 debtors legally incompetent to manage *any* of their property. We read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan. It would presumably be an abuse of discretion for the bankruptcy judge to confirm a plan that retained more of the property in the hands of the trustee than was reasonably necessary to fulfill the plan, though we need not decide that in this case.

If the $50 taken from Heath's wages to pay the Postal Service's garnishment fee were property of the estate, this adversary action would be within the core jurisdiction of the bankruptcy court. 28 U.S.C. § 157(b)(2)(E). But as it is not property of the estate, and no other basis of core jurisdiction is present, the action can be maintained in the bankruptcy court only if it is "related" to the bankruptcy proceeding, 28 U.S.C. § 1334(b), which means (so far as bears on the present case) only if it is likely to affect the debtor's estate, *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 1499 n. 6, 131 L.Ed.2d 403 (1995); *In re United States Brass Corp.*, 110 F.3d 1261, 1269 (7th Cir.1997); *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989)—of which there is no evidence.

AFFIRMED.