**In the Matter of Stewart L. MCGLOCKLING, Debtor.**

**Stewart L. McGlockling, Plaintiff,**

**v.**

**Chrysler Financial Company, LLC, Defendant.**

**Bankruptcy No. 98–43039.**
**Adversary No. 02–4077.**

United States Bankruptcy Court, S.D. Georgia, Savannah Division.

Feb. 24, 2003.

Judd Hill, Savannah, GA, for Plaintiff.

Mark Bulovic, Savannah, GA, for Defendant.

### MEMORANDUM AND ORDER

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

Debtor's case was filed on October 5, 1998. Chrysler Financial Company, LLC

("Chrysler") filed a claim in the amount of $21,389.00 secured by a motor vehicle. Debtor received orders in the early summer of 2002 transferring him to Germany as part of his service in the United States Army. He wishes to take the vehicle financed by Chrysler to Germany so that he will have a reliable means of transportation. The Army requires that he obtain the consent of Chrysler to ship the vehicle overseas. When Chrysler denied Debtor's request to ship the vehicle, this adversary proceeding was filed to compel Chrysler to grant such permission.

This Court has jurisdiction in this core proceeding pursuant to 28 U.S.C. § 157. Pursuant to Federal Rule of Bankruptcy Procedure 7052(a), I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Debtor joined the Army in 1985 and is scheduled to retire in the year 2007. Debtor purchased a 1998 Dodge Avenger in May of 1998, and Chrysler financed $21,539.64 of that purchase price. The installment contract required payments of $395.15 per month for a six-year period maturing in 2004 at an annual percentage rate of 9.5%. The contract further provided that the buyer would not remove the vehicle from the United States without the prior consent of Chrysler.

Debtor's plan was confirmed on March 2, 1999, and provided for a payment of $691.00 per month for sixty (60) months to creditors. His plan is on schedule for successful completion. If Debtor remains on track, Chrysler will be paid off six months earlier than under the original contract and at an interest rate of twelve percent (12%) rather than the contract rate of nine point five percent (9.5%). Currently, disbursements to Chrysler are averaging about $500.00 per month under the plan. Also, according to Debtor's affidavit, the insurance coverage provided by his carrier will still apply if the vehicle is transferred to Germany. (Ex. P–1).

Chrysler has a written policy concerning customer requests for permission to ship vehicles. Among the list of allowable countries to which vehicles can be shipped is Germany. The policy provides for a supervisor to review all such requests including the customer's account history and provides that permission will not be granted when the account has been or currently is in bankruptcy. (Ex. P–2).

Chrysler's representative testified at trial regarding the policy for removal of vehicles from the United States which he administers and applied to Debtor in this case. The representative testified that bankrupt customers are automatically denied permission to remove vehicles from the United States because they are viewed as a higher credit risk. Also, he stated that permission is not always given to non-bankrupt customers. Among the criteria for making that decision as to non-bankrupt customers are the terms of the contract, any equity the debtor may have, and the payment history. The representative mentioned one occasion when a car taken out of the country was wrecked and property damage insurance was denied by the insurance company since the vehicle was out of the country. In this case, the representative personally reviewed Debtor's request and denied it because Debtor was in bankruptcy; however, he was not aware of this Debtor's payment history at the time he denied the request. Chrysler's representative was aware of no instance where vehicles removed from the United States had been confiscated by local authorities, had been sold by account debtors out of trust, or where the lien had been lost as a result of application of foreign law.

Chrysler contends that under 11 U.S.C. § 1327 all property of the estate revests

in the Debtor upon confirmation and the car is, therefore, no longer estate property. Further, it argues that confirmation is *res judicata* as to all issues, including the Debtor's right to modify the contract to force Chrysler to allow the car's removal from the United States. It finally contends that the Debtor can offer no adequate protection to offset the possible increased difficulty of collecting on this account or the increased chance of loss that is occasioned by the car being taken overseas.

The Debtor contends that the following factors provide Chrysler with adequate protection such that he should be allowed to transport his automobile overseas: 1) he is a long-time member of the military; 2) his enlistment period extends beyond the expiration of the term of this Chapter 13 plan; 3) he is current in his payments; 4) he is making payments faster than required under the contract and at a higher rate of interest; and 5) the vehicle is fully insured. Further, Debtor argues that the actions of Defendant Chrysler violate the automatic stay provision of 11 U.S.C. § 362 in that it constitutes an effort on the part of Chrysler to exercise prohibitive control over property of the estate.

## CONCLUSIONS OF LAW

### (1) Debtor's Car is Property of the Estate

Determining whether or not Debtor's car is property of the estate is a threshold matter in this case. If Debtor's car is not property of the estate, I lack jurisdiction to prevent Chrysler from enforcing its lien. *See In re Heath*, 115 F.3d 521, 524 (7th Cir.1997) (debtor's wages taken to pay garnishment fee not property of the estate and not within core jurisdiction of court). If the car is property of the estate, then the Debtor has a qualified right to use it under 11 U.S.C. § 363.

■ When read together, 11 U.S.C. § 1306 and 11 U.S.C. § 1327 create a tension as to what property remains in the estate after confirmation and what property vests in the debtor. The Eleventh Circuit has adopted the estate transformation approach and vests most of the property of the estate in the debtor. *See Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1340 (11th Cir.2000). "[T]he plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." *Id.* at 1340 (quoting *Heath*, 115 F.3d at 524). The term *"necessary,"* however, creates ambiguities as to what should be included in the post-confirmation estate. I conclude that the test is to examine the individual debtor to determine what is necessary, under the particular facts and circumstances, to complete a successful plan.

Some cases have held that the bankruptcy estate consists solely of post-petition earnings of the debtor devoted to plan payments. *See Telfair*, 216 F.3d at 1340; *In re McKnight*, 136 B.R. 891, 894 (Bankr. S.D.Ga.1992). Those decisions, however, limited their definition of necessary to the facts of the case. Further, they involved post-confirmation funds, not a pre-confirmation asset that is essential to the daily life of the debtor.

■ Courts have most frequently dealt with the issue of what assets are necessary for a successful Chapter 13 reorganization in response to motions seeking relief from the automatic stay of 11 U.S.C. § 362. Those decisions have generally found that cars are necessary. *See In re Powell*, 223 B.R. 225, 235 (Bankr.N.D.Ala.1998) (relief from stay denied because car necessary for an effective reorganization and not having car might prevent debtor's wife from performing job); *In re Coates*, 180 B.R. 110, 120 (Bankr.D.S.C.1995) (debtor's car was necessary to effective reorganization even

though debtors did not use vehicle for business purposes, but vehicle was debtor's sole vehicle for personal and family purposes); *In re Jones,* 119 B.R. 996, 1005 (Bankr.N.D.Ind.1990) (noting that vehicle was debtor's only means of transportation, and that "[a]n automobile is a necessity in Marion, Indiana, in 1990"). *But see In re Fisher,* 203 B.R. 958, 964 (N.D.Ill.1997) (car vested in debtor upon confirmation and not protected by automatic stay).

Debtor's car is necessary for his successful reorganization. If Chrysler repossesses Debtor's vehicle or denies him the ability to transport it to Germany, he will be left without a reliable means of transportation. Without reliable transportation, Debtor will find it more difficult to conduct his life in the manner necessary to satisfy the claims of creditors under the plan and will have to expend additional funds for transportation. He will be deprived of the valuable right to own a car free and clear of debt at the end of the case. In short, Debtor's car is property of the estate because it is necessary for his successful reorganization.

### (2) Debtor Has The Right to Use Property of the Estate

■ 11 U.S.C. § 363(b)(1) states that, "the trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Further, 11 U.S.C. § 1303 gives the debtor this same power to use, sell or lease, "under sections 363(b), 363(d), 363(e), 363(f) and 363(*l*)." *See In re English,* 20 B.R. 877, 879 (Bankr.E.D.Pa. 1982) (as a general proposition, the debtor may use property of the estate); *In re Thacker,* 6 B.R. 861, 866 (Bankr.W.D.Va.

1980) (Code § 1303 gives debtor special advantage of continuing to use personal property encumbered by liens). In taking the car to Germany, Debtor is merely attempting to use the vehicle pursuant to § 363. Debtor is not attempting to modify the plan pursuant to 11 U.S.C. § 1329. Thus, the *res judicata* effect of the plan is not implicated in this case.

### (3) Chrysler Cannot Unilaterally Deny Debtor's Request Based On The Fact That He Is In Bankruptcy

■ "It is axiomatic that the bankruptcy laws disfavor *ipso facto* clauses which purport to entitle a creditor to call due an indebtedness solely on account of a bankruptcy filing." *See In re Dossett,* 1991 WL 11002466, *1 (Bankr.S.D.Ga. 1991). Further, 11 U.S.C. § 363(1)[1] mandates that parties may not contract out of bankruptcy by placing restrictions on the debtor's use of property triggered solely by the debtor's bankruptcy filing. *See In re Grablowsky,* 180 B.R. 134 (Bankr. E.D.Va.1995) (non-punitive restriction on transfer of partnership interest triggered by bankruptcy found unenforceable). "[T]he Bankruptcy Code explicitly invalidates provisions of private agreements which deprive the debtor of the use and benefit of property upon the filing of a bankruptcy case." *In re Pease,* 195 B.R. 431, 433 (Bankr.D.Neb.1996) (held that waiver of automatic stay was invalid under § 363(1) because enforcement of such provision deprives the debtor of the ability to use, sell or lease the property). The rationale for regarding *ipso facto* clauses as inapplicable is that the debtors should not

---

1. 11 U.S.C. § 363(*l*) states that, "the [debtor] may use, sell, or lease property under subsection (b) or (c) of this section, or a plan under chapter 11, 12, or 13 of this title may provide for the use, sale, or lease of property, notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor."

be hampered in their rehabilitation efforts or in the orderly distribution of the estate.

■ Chrysler's decision whether or not to grant consent to ship vehicles is based on its written policy, which states that it will not grant permission to ship vehicles when the account has been, or currently is, in bankruptcy. I find that Chrysler's policy operates as a prohibited *ipso facto* clause in that it alters Debtor's right to use property of the estate solely because of his financial condition. In making its decision, Chrysler failed to consider factors used to determine the eligibility of non-bankrupt customers such as payment history, remaining time of the plan and equity. Instead, Debtor's bankruptcy was dispositive of the issue. Had it properly applied its own non-bankruptcy related factors, Chrysler should have honored Debtor's request.

### *(4) Chrysler Will Be Adequately Protected While Vehicle Is Located in Germany*

■ The grant to use property under § 363 is not without conditions. Under § 363(e) the Court, "shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." Further, § 363(*o*) requires that the, "[debtor] has the burden of proof on the issue of adequate protection." The adequate protection provided by Debtor can take a variety of forms. 11 U.S.C. § 361(3) is a catch-all provision and permits such relief, "as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." Here, Debtor has presented an affidavit stating that his insurance policy will still apply when the vehicle is in Germany. Chrysler has not refuted this evidence. Since Debtor's vehicle will still be insured, Chrysler will not bear the risk of physical damage when the vehicle is relocated to Germany. *See In re Club Assocs.*, 107 B.R. 385, 394 (Bankr.N.D.Ga.1989) (noting that a creditor may be adequately protected by payments to third parties such as payments for insurance or taxes).

The stability of Debtor's employment provides Chrysler with assurances that the claim will be satisfied. Debtor has a long service history with the military and his enlistment period extends beyond the expiration of the term of the Chapter 13 plan. Currently, Debtor remains on track to complete his plan and is paying Chrysler quicker and at a higher rate of interest than under the original agreement. Debtor has satisfied his burden of proving adequate protection.

There is no hint of bad faith on the part of Debtor. Instead, Debtor is merely fulfilling his duty as a member of the military by moving to Germany. As much as one can be certain about anything that has yet to happen, this Court is confident that Chrysler will continue to be paid and that its claim will be satisfied while Debtor is in Germany. The fact that Debtor's insurance policy will still apply while he is in Germany coupled with the stability of his employment, and his payment history results in Chrysler in being provided with the "indubitable equivalent" of its lien on the car in Georgia. There could hardly be a factually stronger case to support Debtor's motion.

### *ORDER*

Despite the confirmation of his plan, Debtor's car remains property of the estate as it is necessary to his successful reorganization. Further, Debtor retains the right to use estate property as long as Chrysler is afforded adequate protection. In this case, adequate protection has been established and the Motion is Granted. Chrysler Financial Company, LLC, is ORDERED to permit Debtor's vehicle to be

shipped to Germany by the United States Army.