In re Bernice FORTE, Debtor.

No. 03 B 45615.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 6, 2005.

Robert J. Semrad, Jr., Robert J. Semrad & Associates LLC, Chicago, IL, for debtor.

Jay W. Tribou, Chicago, IL, for trustee.

*Memorandum Opinion*

BRUCE W. BLACK, Bankruptcy Judge.

This case is before me on the motion of Marilyn O. Marshall, the Chapter 13 Standing Trustee (the "Trustee"), to modify the confirmed chapter 13 plan of the debtor, Bernice Forte (the "Debtor").

### I. *Jurisdiction*

Jurisdiction lies pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue is proper under 28 U.S.C. § 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### II. *Issues*

The Trustee has moved to modify the Debtor's confirmed chapter 13 plan by increasing the total payments due under the plan by an amount equal to the proceeds the Debtor received when she refinanced the mortgage on her home. To resolve this motion, I will discuss five issues: (1) whether the Trustee's motion is timely; (2) whether the disposable income test in § 1325(b) of the Bankruptcy Code [1] applies to motions to modify under § 1329; (3) whether the proceeds from the refinancing are property of the bankruptcy estate; (4) what principles should govern the exercise of judicial discretion under § 1329; and (5) whether the Debtor's attempt to pay off her plan early should be treated as a motion to modify under § 1329.

### III. *Facts*

The facts of this case are uncomplicated and largely uncontested.[2] On November 7, 2003, the Debtor filed for relief under chapter 13 of the Bankruptcy Code. The Debtor's plan was confirmed on January 13, 2004. It was amended on December 14, 2004.

On January 18, 2005, an order was entered granting the Debtor's motion to refinance real property. That order stated, "all proceeds of such refinance shall be tendered to the Chapter 13 Trustee." Then on January 28, 2005, the Trustee received an $11,343.88 lump sum payment from the proceeds of the Debtor's refinancing. Prior to receiving these pro-

---

1. 11 U.S.C. §§ 101 ff. Any reference to "the Code" or "section" is a reference to the Bankruptcy Code, unless another reference is specified.

2. The only significant dispute concerns the amount of money the Debtor received from the refinancing. Pointing to the discrepancy between the amount listed in her payoff letter and the lesser amount received after the closing, the Trustee contends that the Debtor must have misled the mortgage company about the actual amount necessary to complete the plan, because completion of a chapter 13 plan is typically a condition of closing a refinancing transaction.

ceeds, the Trustee had sent a payoff letter to the Debtor's mortgage company quoting the amount of $21,513.68—the sum the Trustee believes is necessary to complete the plan. The Trustee filed this motion to modify the Debtor's plan on May 26, 2005.

## IV. *Discussion*

Section 1329 is titled "Modification of plan after confirmation." It reads as follows:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

### 1. *Timeliness*

The Trustee presents several arguments to support her motion, but the Debtor has raised the threshold issue of timeliness. As expressed in § 1329(a), the Trustee may not move to modify a confirmed plan once the debtor has completed payments under that confirmed plan. *See also: In re Chancellor*, 78 B.R. 529, 531 (Bankr. N.D.Ill.1987); *Casper v. McCullough (In re Casper)*, 154 B.R. 243 (N.D.Ill.1993).

The Debtor argues that the Trustee is barred from seeking modification here because the Debtor completed plan payments when she tendered the $11,343.88 from the proceeds of her refinanced property. The Debtor's position is that the confirmed plan, as previously modified, required the Debtor to make thirteen payments of $375 and twenty-three payments of $260, for a total of $10,855. Thus, because the lump sum exceeded that amount, the plan has been paid off. Indeed, the Debtor asserts, and the Trustee has not denied, that she has paid a total of $16,228.88 to the Trustee. Accepting the Debtor's figures, the amount paid exceeds the original pot by nearly 50%.

The Trustee's primary position is that, because the lump sum was received in the fourteenth month under the plan, the case can not complete before the thirty-sixth month unless the Debtor pays all creditors 100% of their claims. According to the Trustee, the amount needed to do that is the amount stated in the payoff letter-$21,513.38. The Trustee interprets language in section D of the plan to mean that all allowed claims of creditors must be paid in full prior to the early completion of the plan.

The Debtor argues to the contrary, that the disputed language simply states one circumstance where the plan will terminate early by its own terms. I believe the language is susceptible to either interpre-

tation. Which interpretation I embrace is critical because if I accept the Debtor's view, the Trustee's motion is untimely and must be denied.

█ Section D of the Debtor's plan is part of the model plan used in this district. It is titled "Payments by debtor to the trustee." As confirmed, it read as follows:

1. *Initial plan term.* The debtor will pay to the trustee $375 monthly for 36 months [and $0 monthly for an additional 0 months], for total payments, during the initial plan term, of $13,500 . . . .

2. *Adjustments to initial term.* (a) If the amount paid by the debtor to the trustee during the initial plan term does not permit payment of general unsecured claims as specified in Paragraphs 8 and 9 of Section E, then the debtor shall make additional monthly payments, during the maximum plan term allowed by law, sufficient to permit the specified payments. (b) The plan will conclude, prior to the end of the initial plan term, at such time as all allowed claims are paid in full, with any interest required by the plan.

(An order was entered later reducing the payment to $260 per month. Paragraphs 8 and 9 of section E specify a minimum percentage to be paid to general unsecured creditors and whether interest will be paid.)

The Trustee interprets subsection 2(b) to mean that the plan may conclude prior to the end of the initial plan term if, and only if, all allowed claims are paid in full. That is, only if all allowed claims have been paid at 100% may a debtor exit chapter 13 prior to the term of months set forth in subsection 1 of section D. In this case the Debtor would have to pay $21,513.68, the amount equal to 100% of the claims of creditors in order to be able to pay off the plan before the thirty-sixth month.

As noted, the Debtor argues that this section merely sets forth just one circumstance under which "the plan will conclude." She argues that the language of this subsection only requires that when all allowed claims are paid in full, the plan must necessarily conclude, and that the section is silent as to any other conditions under which the plan might, or might not, conclude. The Debtor stresses what the language does not say-that the plan may only end early if all creditors are paid 100%. An example of what the plan could say, but does not, is found in *Sunahara v. Burchard (In re Sunahara),* 326 B.R. 768, 770 (9th Cir. B.A.P.2005), where the model plan for the Northern District of California is quoted as saying. " '[U]nless all allowed claims are paid in full, this Plan shall not be completed in fewer than 36 months from the first payment date.' "

I believe the correct meaning of subsection 2(b) may be found by contrasting it to subsection 2(a). Subsection 2(a), as already mentioned, sets a percentage guarantee to the unsecured creditors. This guarantee becomes meaningful if, for example, a debtor files a 10% plan for 48 months and more unsecured creditors than expected file claims. Without the guarantee of subsection 2(a), the plan could complete at the end of the 48 months with the unsecured creditors receiving less than 10% of their allowed claims as a result of the additional unsecured claimants' dilution of the available pot. With the guarantee of subsection 2(a), the plan's term must be extended, requiring the debtor to continue making monthly payments, up to the maximum term allowable, until all the unsecured claimants receive at least 10% of their allowed claims.

Viewed in contrast to subsection 2(a), subsection 2(b) simply accomplishes the opposite: the plan necessarily must com-

plete when all allowed claims are paid in full. If it so happens that, for whatever reason, fewer than expected unsecured claimants, or even no unsecured claimants, file claims, then the plan concludes whenever the debtor's monthly payments result in a 100% distribution to holders of all allowed claims. This is but one condition under which the plan will conclude. I conclude that subsection 2(b) of section D does not mean that the plan may only conclude prior to the end of the initial term if full payment of all allowed claims is made. Accordingly, the Debtor is not precluded from early completion of her plan by the terms in subsection 2(b).

Because the model plan is implemented by Local Bankruptcy Rule 3015–1, which is authorized by Federal Rule of Bankruptcy Procedure 9029, adopting the Trustee's Interpretation of subsection 2(b) might well render the provision unenforceable for being in violation of Rule 9029.[3]

■ The Trustee's secondary argument on timeliness is that the Debtor's lump sum payment did not constitute "completion of payments under such plan," as that phrase is used in § 1329(a). She argues that the plan's "temporal period" of thirty-six months is mandatory and cannot be satisfied by a pre-payment which results in the equivalent of thirty-six months of payments. I decline to accept this argument, because I believe the amount, not the duration, of payments is determinative. *See Casper v. McCullough (In re Casper),* 154 B.R. 243, 246–47 (N.D.Ill.1993); *Sunahara v. Burchard (In re Sunahara),* 326 B.R. 768, 773 (9th Cir. B.A.P. 2005).

It follows that the Debtor's lump sum payment has indeed paid off the plan.

Therefore, by the terms of § 1329, the Trustee's motion is untimely and must be denied. Moreover, even if the Trustee were correct about the meaning of section D of the plan, she would still not prevail on her motion. I will discuss her remaining arguments because they afford an alternate basis for my ruling.

### 2. *Disposable Income Test Not Applicable*

■ A second argument of the Trustee can be handled quickly. The Trustee argues that the disposable Income test, found in § 1325(b)(1)(B), applies on postconfirmation plan modification. She contends that the proceeds of the refinancing constitute disposable income which must be distributed to creditors. In so arguing, the Trustee asks me to revisit *In re Golek,* 308 B.R. 332 (Bankr.N.D.Ill.2004). In *Golek,* I concluded that § 1329(b) applies certain specific Code sections to postconfirmation plan modifications but does not apply § 1325(b). Nothing has changed to cause me to reconsider that position. I decline to do so.

■ It must also be noted that even if I thought the disposable income test of § 1325(b) were applicable to motions to modify under § 1329, the test would not apply here, because the Trustee is the movant, and the test only applies if the trustee or a creditor objects to a plan. Neither has done so here. *See* 3 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. § 255.1 at 255–6 (2000 & Supp.2004).

■ Moreover, if I were to apply the disposable income test here, I would conclude that the refinancing proceeds are not

---

**3.** In *Sunahara v. Burchard (In re Sunahara),* 326 B.R. 768, 783 (9th Cir. BAP 2005), the court concluded: "... the Code allows a debtor to modify a chapter 13 plan so as to conclude it in fewer than 36 months, without payment of all claims in full. A local rule prohibiting Debtor from doing what he is entitled to do under the Code is inconsistent with an Act of Congress and is, therefore, invalid under Rule 9029(a)."

income, just as I concluded in *Golek* that the proceeds from the sale of a debtor's house were not income.

### 3. *Property of the Estate*

■ The Trustee's next argument raises profound issues of chapter 13 jurisprudence.[4] The Trustee is adamant that the provisions of the confirmation order, when construed with certain sections of the Bankruptcy Code, mandate that the proceeds from the refinancing must be found to be property of the bankruptcy estate and must be distributed for the benefit of creditors.[5] Although I agree that the proceeds are property of the estate, I do not agree that the proceeds must be distributed to creditors.

The pertinent language in the confirmation order reads, "all property of the estate, as specified by 11 U.S.C. §§ 541 and 1306, shall continue to be property of the estate following confirmation."[6] Sections 541 and 1306 respectively set forth the definitions of property of the estate for the entire Code and for chapter 13. Section 1306 states:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title-

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, or 11, or 12 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case, but before the case is closed, dismissed, or converted to a

case under chapter 7, 11, or 12 of this title, whichever occurs first.

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

Section 1306(a) expands the definition of property of the estate for chapter 13 purposes to include property acquired by a debtor after the bankruptcy filing. Section 1306(b) places *possession* of the property of the estate in the debtor. Section 1327 adds significant complications. The troublesome provisions of the section are as follows:

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

Under this statutory scheme, without a revesting provision in the plan or the confirmation order, upon confirmation all property of the estate would appear to vest in the debtor and not be available to creditors. We need not speculate on such a result here because, as noted above, the confirmation order in this case does provide "otherwise." It states that all of the property of the estate shall continue to be property of the estate through case closure.

The Seventh Circuit Court of Appeals has indicated that a literal reading of the

---

4. *See* 3 LUNDIN, § 237.1 at 237–10

5. Two of my colleagues have dealt with this question recently, reaching opposite conclusions. *See In re Drew*, 325 B.R. 765 (Bankr.

N.D.Ill.2005) and *In re James Brown*, 03 B 23239 (Bankr.N.D.Ill. July 8, 2005).

6. I shall refer to this language as "the revesting provision."

revesting provision in the order of confirmation may not be proper in all circumstances. In *Black v. United States Postal Service (In re Heath)*, 115 F.3d 521 (7th Cir.1997), the court analyzed the impact of a confirmation order on a chapter 13 trustee's suit against that debtor's employer. There the trustee had brought suit against the employer for charging the debtor a $50 fee to administer the court order requiring the employer to withhold plan payments from the debtor's salary and forward them to the trustee. The confirmation order in that case retained to the estate that portion of the debtor's property "necessary to fulfill the plan." *Id.* After a discussion of how the trustee might administer various hypothetical situations, Judge Posner, writing for the court, concluded:

> [w]e read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property as is not necessary to the fulfillment of the plan.

*Id.*

This discussion is more than academic. The holding in *Black* is that bankruptcy courts have no jurisdiction to deal with property of the debtor after confirmation. Accordingly, a bankruptcy court has no jurisdiction to entertain a motion by a trustee or creditor under § 1329 seeking to take property acquired by a debtor after confirmation unless the court concludes that the property is property of the bankruptcy estate rather than property of the debtor. Therefore, this determination must be made each time a postconfirmation motion is addressed to property.

In *Black* the plan included language revesting property into the estate to the extent "necessary to fulfill the plan." That provision is roughly equivalent to what

Judge Posner held resulted from the operation of sections 1306 and 1327: property returns to a debtor which is "not necessary to the fulfillment of the plan." *Black*, 115 F.3d at 524. The revesting provision in the confirmation order in this case is much more inclusive than that in *Black*, revesting all of the Debtors' property into the bankruptcy estate. Although the language in *Black* raises a question whether this inclusive revesting provision is objectionable, to this point its efficacy has not been attacked by any party. Moreover, no evidence or argument has been presented on this issue—not at the original confirmation hearing where the Debtor had the burden of proof or at the modification hearing where the Trustee had that burden. In the absence of both evidence and objection, I decline to invalidate or modify the confirmation order on my own motion.

Accordingly, giving full effect to the revesting provision in the confirmation order, I conclude that the proceeds of the Debtor's refinancing became property of the bankruptcy estate by operation of that confirmation order. Therefore, I conclude that I do have subject matter jurisdiction under *Black* to decide the Trustee's § 1329 motion.

### 4. *Discretion under Section 1329*

#### a. *Code Sections Included in Section 1329*

■ Having determined that I have jurisdiction and recognizing that the determination of a § 1329 motion is left to the discretion of the bankruptcy judge (*Matter of Witkowski*, 16 F.3d 739, 746 (7th Cir. 1994)), the questions remaining for resolution of the Trustee's motion are what principles should govern this exercise of judicial discretion and how do these principles apply to the motion before me. As noted in *Witkowski*, § 1329 itself offers little guidance on when the motion should be

granted. *Id.* The section's only guidance is the list of sections which "apply to any modification." As Judge Lundin points out in his treatise, applying the rules designed for the initial confirmation hearing in the context of the modification hearing presents significant problems.[7] These problems notwithstanding, the sections listed in § 1329(b) must be examined for guidance in exercising discretion at a modification hearing.

Subsection (a) of § 1322 is mandatory. In pertinent part it says:

(a) the plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment ... of all claims entitled to priority ...; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

Because § 1322(a) is mandatory, it would appear to be an abuse of discretion for a judge to approve a modification under § 1329 which would result in a plan which did not comply with the requirements of § 1322(a). In this case, neither party argues that § 1322(a) is at issue, and I conclude that it has no effect on my discretion.

Subsection (b) of § 1322 is permissive. It lists ten provisions which a plan may include. The effect of this subsection at confirmation is to foreclose objections in the nature of "the debtor can't do that." Such objections are reduced to "the debtor shouldn't be allowed to do that." The

effect should be the same at a modification hearing where the debtor is the movant. On the other hand, it seems to me that the balance should be different when a trustee or a creditor is seeking to impose a permissive provision on a debtor through a § 1329 motion.[8] In any event, most of the provisions in § 1322(b) are not relevant to a § 1329 motion, because such a motion is only permitted for three specific purposes: (1) increasing or reducing "the amount of payments," (2) extending or reducing "the time for such payments," and (3) altering the amount paid to a creditor who receives payment outside the plan.

In this case, neither party argues that any of the provisions of § 1322(b) are at issue, and I conclude that they have no effect on my discretion.

Section 1323 governs modification of plans before confirmation. Subsection (c) limits the right of holders of secured claims to change their positions regarding accepting or rejecting the plan in some circumstances. It is difficult to see how this provision will be relevant to most § 1329 motions, and because the modification proposed by the Trustee's motion would not adversely affect holders of secured claims, I conclude that it is not relevant to the exercise of discretion here.

Section 1325 is titled "Confirmation of plan." In subsection (a) it says, in substance, that "the court shall confirm a plan if" six specified conditions are met. Subsection (a) is imperative. If the debtor's plan complies with the six conditions, a judge must confirm the plan, "except as provided in subsection (b)." Subsection (b) provides that "if the trustee or the holder of an allowed unsecured claim objects" the judge "may not approve the plan

---

7. 3 LUNDIN, § 254.1 at 254–2.

8. In its entirety § 1321 says, "The debtor shall file a plan." Nothing in chapter 13 allows anyone else to propose an original plan for confirmation.

unless" either any objecting creditor is paid in full or the disposable income test is satisfied. The disposable income test, as stated in subsection (b), requires that "all of the debtor's projected disposable income to be received in the three-year period beginning on the date the first payment is due under the plan will be applied to make payments under the plan."

Because the requirements of subsection (b) only become operable at confirmation if the trustee or a creditor objects, in effect they are given a potential veto over an otherwise confirmable plan. Only at their request-not even on a judge's own motion-can a proposed plan be subjected to measurement by the disposable income test contained in § 1325(b).

Section 1329(b) includes § 1325(a) in the list of Code sections applying at modification in a curious way. Section 1329(b)(1) says, "Sections 1322(a), 1322(b), and 1323(c) of this title *and the requirements of* section 1325(a) of this title apply to any modification under subsection (a) of this section" (emphasis supplied). It is not apparent why § 1325(a) was not simply included in the initial list of sections nor why the words "the requirements of" were placed in front of § 1325(a) but not the other referenced sections. As noted above, at an original confirmation hearing a judge must confirm the plan if the six requirements listed in § 1325(a) are met. But at modification, under § 1329(b)(2), the procedure is reversed. The proposed modification becomes effective unless it is disapproved. This procedural nicety may explain the separate treatment for § 1325(a) in § 1329(b).

Whatever Congress' motivation was for enacting § 1329(b) as written, the effect of not applying the disposable income test of § 1325(b) at modification is to remove from the modification hearing a potential veto from trustees and creditors. This is entirely consistent with the discretionary nature of a judge's decision under § 1329.

Three provisions of § 1325(a) are clearly important to a modification hearing. The requirement of subsection (3) is that "the plan has been proposed in good faith and not by any means forbidden by law." Transporting this provision from confirmation to modification creates some confusion. The most obvious problem arises when it is a trustee or creditor moving under § 1329, because by proposing a modified plan, they are placing their good faith at issue.[9] Assessing their good faith is fundamentally different from assessing the good faith of a debtor, either at confirmation or modification.

The Debtor here does not challenge the Trustee's good faith. Nor do I, it is clear that her actions are consistent with her fiduciary duties to the creditors.

The second requirement of § 1325(a) that is important to modification is the best-interests-of-creditors test found in subsection (4), which requires that:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date . . . [10]

Application of this test in the context of a modification has produced extensive litigation. The various issues are discussed at length in Judge Lundin's treatise.[11]

**9.** 3 LUNDIN. § 254.1 at 254–19–254–22.

**10.** 11 U.S.C. § 1325(a)(4).

**11.** 3 LUNDIN, § 254.1 at 254–3–254–18.

One issue that divides the courts is whether the best-interests-of-creditors test should be applied as of the effective date of the modification or the original effective date of the plan. Judge Lundin concludes that "a majority of reported decisions fix the effective date for best-interests-of-creditors test purposes at modification as the effective date of the plan as modified."[12] I agree with the majority. On the record in this case, however, I do not have sufficient information to be able to perform the calculation required by the test. (If the Trustee's motion had been timely, an evidentiary hearing may have been necessary to determine this issue.)

Moreover, the best-interests-of-creditors test makes eminent good sense as a restraint on debtors who seek to pay too little to creditors, both at confirmation and modification. It has little apparent function when a trustee or a creditor is proposing a modification, because they will almost surely be seeking an increase in payments under the modified plan which will, almost by definition, be in the best interests of creditors. To the extent that the Trustee is asserting the best-interests-of-creditors test here, it is not in support of her motion seeking to increase the amount of the Debtor's payments. Instead, it is as part of her argument that the Debtor's attempt to pay off the plan early is in fact a motion for modification under § 1329 which must consequently be measured by the best-interests-of-creditors test.[13]

The third part of § 1325(a) that is pertinent to modification is the feasibility test found in subsection (6), which requires that "the debtor will be able to make all payments under the plan and to comply with the plan." This will frequently pose problems if a proposed modification would increase the amount due near the end of a sixty month plan, but feasibility is not an issue in this case.

All in all, the sections listed in § 1329(b) provide little guidance for deciding the Trustee's motion to modify. Fortunately, those sections are not the exclusive source of guidance.

b. *Considerations Not Listed in Section 1329*

Any exercise of judicial discretion under the Bankruptcy Code should be informed by the two fundamental concepts of a fresh start for debtors and fairness to creditors. These nebulous concepts have somewhat more substance in the chapter 13 context. Some cases refer to the contract between a debtor and creditors formed by confirmation of the chapter 13 plan.[14] Others refer to the "Chapter 13 Deal,"[15] which I prefer to call the chapter 13 bargain. The concept, as stated in *In re Burgie*, is simple:

In place of liquidating non-exempt assets to pay creditors under chapter 7 of the Bankruptcy Code, Congress gave individuals with regular income the option of adjusting their debts pursuant to a plan under chapter 13. The chapter 13 deal permits a debtor to retain all pre-petition property, including earnings, assets, money in the bank and real estate. In exchange for keeping all of these assets, the debtor must commit all post-petition disposable income to the payment of creditors under a chapter 13

---

12. *Id.* at p. 254–6.

13. See section 5 below.

14. *In re Richardson*, 283 B.R. 783, 801 (Bankr.D.Kan.2002).

15. *McDonald v. Burgie (In re Burgie)*, 239 B.R. 406, 410 (9th Cir. BAP 1999).

plan for a period of three to five years. If the debtor makes all of the payments required under the plan, all of the debtor's dischargeable debts are discharged, and the debtor keeps all of the prepetition assets.[16]

This bargain defines the relationship between a debtor and creditors for the duration of the case. A motion under § 1329 is simply an attempt to revise that contractual relationship. Because the motion is an attempt to change the *status quo*, its decision will often depend on who has the burden of proof. Either a debtor will have to prove the fairness of reducing plan payments or shortening the term of the pan. Or a trustee or creditor will have to prove the fairness of increasing payments or lengthening the term. At the risk of belaboring the obvious, denial of a motion to modify simply results in the original bargain going forward. Just as the chapter 13 bargain embodies a Congressional determination of overall fairness, I conclude that the determination of a motion under § 1329 seeking to adjust that bargain properly depends on the fairness of the proposed modification, viewed in light of all the circumstances.

In *Matter of Witkowski*, 16 F.3d 739, 746 (7th Cir.1994), in deciding that a change in circumstances is not a threshold requirement for a § 1329 motion, the Seventh Circuit made it clear that a bankruptcy judge, in deciding such a motion, can consider whether circumstances had in fact changed. Therefore, even the cases that do treat changed circumstances as a threshold issue offer guidance for deciding a § 1329 motion in this district. Indeed, just how circumstances have changed between confirmation and modification will often be determinative.

Courts governed by the Fourth Circuit case of *Arnold v. Weast (In re Arnold)*, 869 F.2d 240 (4th Cir.1989), are obliged to examine the facts for an unanticipated and substantial change in circumstances.[17] Both of these concepts may strongly color the fairness of a motion to modify. The "unanticipated" idea is important here, because the chapter 13 bargain was reached on the basis of the debtor's *projected* disposable income necessary to complete a plan. *See* §§ 1322(a)(1) and 1325(b). Evidence that a debtor had withheld expectations of increased wages from the trustee and creditors at confirmation could be strong evidence to support a modification increasing a debtor's payments. Further, the passage of time between confirmation and the changed circumstance will often be strong circumstantial evidence on whether the change was truly unanticipated.

In this case, there is no argument that the changes in the real estate and financial markets which led the Debtor to refinance were in any way unanticipated. Further, because the Debtor's motion to refinance was granted fourteen months after confirmation, it appears unlikely that the Debtor intended at confirmation to end the case with a refinancing.

The concept of substantiality will always be present at modification. Every time a § 1329 motion is resolved on the merits, a judge will have to decide whether any change in circumstances is substantial enough to warrant adjusting the chapter 13 bargain.

One helpful case from a bankruptcy court in the Fourth Circuit is *In re Mur-*

---

**16.** *Id.*

**17.** In *Arnold* the Fourth Circuit held that res judicata requires a showing of an unantic-ipated, substantial change in circumstances to support a § 1329 modification.

*phy,* 327 B.R. 760 (Bankr.E.D.Va.2005). There the court considered two motions by trustees under § 1329, one involving a sale of real estate and one a refinancing. Regarding the refinancing motion the court concluded:

> But even if the appreciation [in the value of the debtor's real estate] could be fairly characterized as both substantial and unanticipated, the court cannot find that the refinance effected an improvement in the debtors' *financial condition* sufficient to support involuntary modification of their plan. The refinance simply exchanged the increase in the value of the house for a corresponding amount of debt. While it is true that the debtors, by refinancing, have in a colloquial sense "tapped" the equity that has accrued since confirmation, the cash they have received is by no means found money. What the debtors have received, very simply, is a loan. A loan does not represent income, nor does it improve a debtor's financial condition. Rather, the cash received from a loan is balanced by a corresponding debt, with the result that the debtors' net worth remains unaltered. The trustee does not suggest that the debtors could have been compelled, 18 months into a five-year plan, to incur indebtedness and borrow against the equity in their residence so as to increase the dividend on unsecured claims regardless of how much the property might have appreciated during the plan term. The fact that the debtors (whether wisely or otherwise) voluntarily decided to borrow against the equity should not result in a different outcome.

*Id.* at 774.

I agree with the *Murphy* court's analysis that a refinancing does not improve a debtor's financial condition. This *unchanged* condition is a strong argument for denial of the Trustee's motion.

The most significant change in circumstances here is the Debtor's ability to borrow money to allow her to perform her chapter 13 bargain early. Given the time value of money, paying off her plan early will benefit all concerned.

Accordingly, having considered the specific provisions of the Code sections listed in § 1329(b) and the more general considerations of the fairness of a proposed adjustment in the chapter 13 bargain, I conclude that the Trustee has not met her burden of showing that the plan should be modified as she proposed.

### 5. *Early Plan Payoff*

In section 1 of this discussion I rejected the Trustee's arguments (1) that section D(2) of the model plan prohibits paying off a plan before the thirty-sixth month unless all creditors are paid in full, and (2) that the Debtor's lump sum payment did not result in completion of payments under the plan. One additional argument of the Trustee which must be addressed is related to those arguments. This argument is that the Debtor's attempt to pay off the plan early with the proceeds from her refinancing constitutes a motion to modify the plan under § 1329.

I am sympathetic to the substance of this argument. Indeed, in *In re Golek,* 308 B.R. 332 (Bankr.N.D.Ill.2004), I reached that result in similar circumstances. But procedurally, the argument comes too late. The time to raise this argument was in response to the Debtor's motion seeking permission to refinance. If made and accepted then, the Debtor's request to refinance in order to pay off her plan early would have been construed as the Debtor's motion to modify and therefore would have been measured against the requirements of § 1329. The Debtor's good faith would

have been at issue under § 1325(a)(3),[18] and the calculations required by the best-interests-of-creditors test under § 1325(a)(4) could have been performed. After the lump sum payment has completed payments under the plan, it is simply too late for the Trustee to raise this issue.

## V. *Conclusion*

For the reasons discussed herein, the Trustee's motion to modify the Debtor's plan is DENIED.

This Memorandum Opinion will serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. A separate judgment will be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.